IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

COLUMBIAN FINANCIAL
CORPORATION,
THE COLUMBIAN BANK
& TRUST CO.,

     Plaintiffs,

vs.             Case No. 14-2168-SAC

JUDI M. STORK, DERYL K. SCHUSTER,
OFFICE OF THE STATE BANK COMMISSIONER
OF KANSAS, EDWIN G. SPLICHAL, and
J. THOMAS THULL,

      Defendants.

MEMORANDUM AND ORDER

   This 42 USC § 1983 case alleging due process violations comes before

the Court on Defendants' motion to dismiss.

## I. Motion to Dismiss Standard

   Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and

12(b)(6).

   Defendants contend the complaint is jurisdictionally deficient. Rule

12(b)(1) of the Federal Rules of Civil Procedure authorizes a court to dismiss

a claim for lack of subject matter jurisdiction. Federal courts are courts of

limited jurisdiction, so may exercise jurisdiction only when specifically

authorized to do so. *Castaneda v. I.N.S.,* 23 F.3d 1576, 1580 (10th Cir.

1994). Upon a defendant's Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of proving jurisdiction.

Defendants also allege factual insufficiency. Under Rule 12(b)(6), the Court assesses whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted. *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir. 1991). The Supreme Court recently clarified the requirement of facial plausibility:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.* [*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)] at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Id.* at 556 [127 S.Ct. 1955]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* at 557 [127 S.Ct. 1955].

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[C]ourts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Alvarado v. KOB–TV, L.L.C.,* 493 F.3d 1210, 1215 n. 2 (10th Cir. 2007).

## II. Uncontested Facts

The facts are uncontested. Plaintiff Columbian Financial Corporation ("CFC") is a Kansas for-profit corporation and was the sole shareholder of Columbian Bank and Trust Company. Plaintiff The Columbian Bank and Trust Company ("Bank") was a state-chartered bank with its primary business location at 701 Kansas Avenue, Topeka, Kansas.  It was organized under the laws of Kansas, was based in Topeka, and operated through nine branch offices in Kansas and Missouri.

Defendant Judi Stork is the Deputy Bank Commissioner of Kansas and is sued in her official capacity as well as in her individual capacity. Ms. Stork served as Acting Bank Commissioner from June 19, 2010, to January 6, 2011, and from November 2, 2013, to March 18, 2014. When not serving as Acting Bank Commissioner, she served as Deputy Bank Commissioner at all times relevant to this lawsuit. Defendant Deryl K. Schuster is the current State Bank Commissioner of Kansas and is sued in his official capacity in that position. He served as Acting Bank Commissioner from March 19, 2014 to April 6, 2014 then as Bank Commissioner from April 6, 2014 to the present. Defendant Edwin G. Splichal served as Bank Commissioner from January 7, 2011, to November 1, 2013, and is sued in his individual capacity. Defendant J. Thomas Thull served as Bank Commissioner from March 1, 2007, to June 18, 2010, and is sued in his individual capacity.

3

Defendant Kansas Office of the State Bank Commissioner ("OSBC") is a self-funded regulatory agency.

As a state-chartered bank with federally-insured deposits, the Bank was subject to supervision by both the OSBC and the Federal Deposit Insurance Corporation ("FDIC"). In January of 2008, an FDIC examiner conducted an on-site evaluation of the Bank. On April 30, 2008, the FDIC issued its Report of Examination, which downgraded the Bank from its previous ratings in all six of the relevant components.

On July 15, 2008, the Bank stipulated and consented to the issuance of a cease and desist order with the OSBC and FDIC. Dk.15-2 pp. 3-31. On August 22, 2008, Commissioner Thull, acting in his official capacity, issued a Declaration of Insolvency and Tender of Receivership (the "Declaration") finding the Bank insolvent. The Declaration made no reference to the cease and desist order, but stated that Commissioner Thull was immediately taking charge of the Bank and all of its properties and assets on behalf of the State of Kansas pursuant to K.S.A. § 9-1903, § 9-1905, and § 77-536.

The latter statute permits a state agency to use emergency proceedings in a situation involving an immediate danger to the public health, safety or welfare requiring immediate state agency action. K.S.A. § 77-536. K.S.A. § 9-1903 allows a Commissioner taking charge of a bank to appoint a special deputy to manage the affairs of the bank "for such period

of time as deemed reasonable and necessary by the commissioner before returning charge of the bank . . . to the board of directors." K.S.A. § 9-1905 requires a Commissioner taking charge of a bank to "ascertain its actual condition as soon as possible by making a thorough investigation into its affairs and condition," and provides that "if the commissioner shall be satisfied that such bank . . . cannot sufficiently recapitalize, resume business or liquidate its indebtedness . . . the commissioner forthwith shall appoint a receiver." The Declaration stated that Mr. Thull was satisfied that the Bank could not resume business and appointed the FDIC as the Bank's receiver. The FDIC sold a substantial portion of the Bank's assets in a prearranged sale the same day as the seizure.

The Declaration notified the Bank that it could petition for judicial review of the OSBC's actions pursuant to the Kansas Judicial Review Act (KJRA), K.S.A. § 77-601 *et seq*. The Bank and CFC timely filed a petition for review in the District Court of Shawnee County, Kansas on September 22, 2008. In response, the OSBC argued the Bank was *not* entitled to review because no remedy could be had against the OSBC or the Commissioner. The district court apparently did not agree, as it reached the merits of Plaintiffs' due process claim, stating:

> "It seems clear that bank seizures, given their exigency, have long been excused from any notice or pre-hearing seizure requirement (*Fahey v. Mallonee,* 332 U.S. 245, 91 L.Ed.2030 (1947)). However, such is not necessarily the case post-seizure. Some substantive post-deprivation review is required in order to constitutionally ground the

5

decision. *Mathews v. Eldridge,* 424 U.S. 319, 47 L.Ed.2d 18 (1976). A
bank seizure is not excepted."

*Columbian Bank and Trust Co. v. Splichal*, 329 P.3d 557, 2014 WL 3732013,

p. 9 (Kan. App. 2014) (quoting the district court decision). On March 29,

2010, the Shawnee County District Court remanded the matter to the

Commissioner to conduct post-deprivation proceedings under K.S.A. § 77–

536.

   On remand, the OSBC initiated administrative proceedings to which

both the Bank and CFC were parties. Both parties stated uncontested facts

and filed motions for summary judgment. On April 18, 2012, then-

Commissioner Splichal issued a decision in favor of the State Bank

Commissioner on the parties' cross-motions for summary judgment.[1] That

decision specifically stated that the Bank and CFC had the right to petition

for judicial review.

   The Bank and CFC filed two such petitions. The OSBC responded by

filing motions to dismiss, arguing the Bank and CFC were not entitled to

judicial review because no remedy was available. The Shawnee County

District Court agreed so dismissed the petitions as moot on January 30,

2013.[2]

---

[1] The parties do not fully inform this Court of the events that transpired between the date
the district court remanded the case and the date Commissioner Splichal decided the
summary judgment motions.

[2] The KCOA states the district court dismissed the petitions as moot, and this Court accepts
that factual finding. The record before this Court, however, does not contain copies of the
district court's decisions or copies of the parties' briefs filed in the district court, or any

6

Both parties appealed that decision to the Kansas Court of Appeals (KCOA), which affirmed after consolidating the judicial review actions. The KCOA found that both CFC and the Bank had standing, that the FDIC as receiver did not need to be a party, and that the issues were not moot. But it affirmed the denial of relief because the Bank and CFC had not met their burden of proving the invalidity of the Commissioner's action under the KJRA. *Columbian Bank and Trust Co. v. Splichal*, 2014 WL 3732013, 1 (2014).

The KCOA noted that the judicial review action did not seek to recover assets of an estate but sought a declaratory judgment on the Commis-sioner's authority to close a bank, seize its assets, and appoint a receiver. The KCOA addressed the due process issue, finding that banks and owners of a FSLIC-insured savings and loan association have a constitutional right to be free from unlawful deprivations of their property, but that no pre-deprivation hearing was necessary. It held that CFC and the Bank had received sufficient notice and opportunity to be heard post-deprivation by the Commissioner's review under the KAPA and the court's review under the KJRA. *Id.*, 2014 WL 3732013, at 9.

The KCOA further found that the Commissioner did not need to postpone its action to protect the public until after the bank was actually unable to meet a customer's demand for withdrawal of funds. Instead, the

---

documents from the administrative process before the OSBC. Thus the administrative proceedings and the district court's judicial review thereof are not included in the record.

statute permits the Commissioner to reasonably consider future demands that will be made on a bank in order to prevent imminent harm to depositors and to the public. The KCOA found substantial evidence in support of the Commissioner's conclusion that the Bank was insolvent. *Id.* In sum, the Commissioner was authorized to declare the Bank insolvent under K.S.A. 9–1902(2), to take charge of the Bank and all of its assets under K.S.A. 9–1903, and to appoint a receiver under K.S.A. 9–1905. *Id*, at 11.

Plaintiffs filed a petition with the Kansas Supreme Court for review of the KCOA's decision, and it is pending.

Plaintiffs then filed this separate action, alleging procedural and substantive due process violations based on the seizure itself, the lack of a pre-deprivation hearing, and the lack of a timely and meaningful post-deprivation hearing. Plaintiffs seek damages, punitive damages, costs, fees, rescission of the Declaration of Insolvency and Tender of Receivership, a declaratory judgment that the Declaration of Insolvency and Tender of Receivership is invalid, an injunction requiring the Defendants "to comply with state and federal law," and a constructive trust.

## III. Younger Abstention

The parties raise multiple issues regarding Defendants' immunity, Plaintiffs' ability to bring suit under § 1983, Defendants' ability to be sued under that statute, and the Court's exercise of its Declaratory Judgment

discretion. But first, the Court examines its power to hear the case, given the parallel state court proceedings.

Younger abstention requires federal courts to abstain from exercising jurisdiction in certain circumstances.

> *Younger* abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings—when such relief could adequately be sought before the state court.

*Amanatullah v. Colorado Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999) (quoting *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999)). *Younger* abstention requires federal courts to abstain from exercising jurisdiction when (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings "involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997)). *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

Plaintiffs do not dispute that the last two requirements are met, so the issue is only whether there is an ongoing state proceeding. This inquiry involves two subparts: whether there is a pending state proceeding and whether it is the type of state proceeding that is due the deference accorded

by *Younger* abstention. *Brown ex rel. Brown v. Day*, 555 F.3d 882, 888 (10th Cir. 2009). Plaintiffs admit that there is a pending state proceeding, but contend that it is not due *Younger* deference because it is remedial rather than coercive in nature.

*Brown* distinguished between remedial proceedings, to which *Younger* does not apply, and coercive proceedings, to which it does apply. That distinction was made in "the unique context of applying *Younger* to administrative proceedings," *Morkel v. Davis,* 513 Fed.Appx. 724, 728, 2013 WL 1010556, 3 (10th Cir. 2013), so is appropriate here. *Brown* identified the following factors relevant to the determination of whether an administrative proceeding is coercive or remedial in nature: (1) whether the state proceeding is an option available to the federal plaintiff on her own initiative to redress a wrong inflicted by the state or whether the participation of the federal plaintiff in the state administrative proceeding is mandatory; (2) whether the state proceeding is itself the wrong which the federal plaintiff seeks to correct via injunctive relief under section 1983; and (3) whether the federal plaintiff has committed an alleged bad act. *Brown*, 555 F.3d at 890–91.

Each of these factors points toward the conclusion that the administrative proceeding at issue here was coercive, and thus the type of state proceeding that is due the deference accorded by *Younger* abstention. Plaintiffs allegedly committed a "bad act" in reaching the point of risk or

insolvency that led the OSBC to take emergency action to declare insolvency and appoint a receiver. This triggered the state-initiated administrative enforcement proceedings against Plaintiffs, who had to participate or forfeit their claims. And the state proceeding is itself the wrong which the federal plaintiff seeks to correct via injunctive relief, as the alleged deficiencies in the administrative proceedings form the basis for Plaintiff's due process claims – the only claims made in this case.

Where, as here, Plaintiffs claim that constitutional rights would be violated by virtue of the operation of the state proceedings, comity and federalism concerns are at their highest. *Brown*, 555 F.3d at 893.

> State courts are generally equally capable of enforcing federal constitutional rights as federal courts. *See Middlesex Cnty. Ethics Comm.*, 457 U.S. at 431, 102 S.Ct. 2515. And when constitutional challenges impact state proceedings, as they do here, "proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand." *Pennzoil Co.*, 481 U.S. at 14, 107 S.Ct. 1519.

*Morkel,* 513 Fed.Appx. at 728. The Kansas state courts addressed and resolved the same due process questions presented in this case. Because Plaintiffs are attempting to use the federal courts to shield themselves from state court enforcement efforts and to remedy alleged constitutional wrongs in the ongoing state proceedings, *Younger* abstention is appropriate.

Plaintiff's claims for injunctive relief, declaratory relief, a constructive trust, and rescission of the Declaration of Insolvency and Tender of Receivership shall thus be dismissed without prejudice for lack of subject

matter jurisdiction. *See Morkel*, 513 Fed.Appx. at 729. *See also Ecco Plains, LLC v. United States,* 728 F.3d 1190 (10th Cir. 2013) (constructive trust is an equitable remedy); *Rosenfield v. HSBC Bank, USA,* 681 F.3d 1172 (10th Cir. 2012) (rescission is an equitable remedy).

## IV. Damages Claims, Official Capacity

In addition to equitable relief, Plaintiffs seek monetary damages against all Defendants, which are not included in *Younger* abstention. Accordingly, the Court addresses the parties' arguments relating to this relief.

### A. Officials not Proper Defendants

Defendants Stork and Schuster, who have been sued in their official capacities, contend that they are not suable "persons" under § 1983.[3] Neither a State nor its officials sued in their official capacities for damages is a "person" under § 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312 (1989).

Plaintiffs contend that they seek only prospective, injunctive relief against Defendants Stork and Shuster in their official capacities, Dk. 21 p. 36. The Court thus binds Plaintiffs to this position, which is not clear from the face of the complaint. A state official in his or her official capacity, when

---

[3] These same Defendants also raise Eleventh Amendment defenses, but the Court must first consider the "no person" defense. *See Vermont Agency of Natural Resources v. United States*, 529 U.S. 765, 771 (2000) (False Claims Act case holding that when the defendant asserts both "person" and Eleventh Amendment defenses, the court should first determine the "person" issue); *Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000) (applying *Vermont Agency* to § 1983 actions).

sued for injunctive relief, is a "person" under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham,* 473 U.S., at 167, n. 14, 105 S.Ct., at 3106, n. 14; *Ex parte Young,* 209 U.S. 123, 159–160, 28 S.Ct. 441, 453–454, 52 L.Ed. 714 (1908). But injunctive relief is barred by *Younger* abstention, as addressed above.

### B. Bank not a Proper Plaintiff

The parties agree that the Bank is an unincorporated association. *See* Dk. 21, p. 35. Defendants claim that as an unincorporated association, the Bank is not a "person" capable of bringing suit under 42 U.S.C. § 1983. The Court agrees.

The Tenth Circuit has held that an unincorporated association is not a "person" capable of bringing suit under § 1983. *Lippoldt v. Cole*, 468 F.3d 1204, 1211 (10th Cir. 2006). "*Lippoldt* does not distinguish between types of unincorporated associations and the plain holding of the case is that all unincorporated associations lack the capacity to bring suit under § 1983." *Owasso Kids for Christ v. Owasso Public Schools*, 2012 WL 602186, 5-6 (N.D.Okla. 2012).

The Bank contends that *Lippoldt* "runs contrary to the weight of precedent," from other jurisdictions. *See* Dk. 21, p. 35. But *Lippoldt* is binding Tenth Circuit precedent squarely on point, so this Court is bound to follow it. *United States v. Spedalieri,* 910 F.2d 707, 709 n. 2. (10th Cir.

1990) ("A district court must follow the precedent of this circuit, regardless of its views concerning the advantages of the precedent of our sister circuits."). Because the Bank is an unincorporated association incapable of bringing suit under § 1983, it shall be dismissed as a party plaintiff.

## C. Eleventh Amendment

Although the non-person defense above makes it unnecessary for the court to reach the Eleventh Amendment issue, it addresses it alternatively, in an abundance of caution, and finds that Plaintiff's damage claims against Defendants Stork and Schuster are barred by the Eleventh Amendment.

### 1. Stork and Shuster

The Eleventh Amendment generally bars suits for damages against the State.

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, *Welch v. Texas Dept. of Highways and Public Transportation,* 483 U.S. 468, 472–473, 107 S.Ct. 2941, 2945–2946, 97 L.Ed.2d 389 (1987) (plurality opinion), or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

*Will,* 491 U.S. at 66. No waiver or override is alleged here, thus under the general rule Plaintiff's claims against the State and its officials are barred.

In *Ex parte Young*, the Court created an exception, holding that the Eleventh Amendment generally will not operate to bar suits so long as they (i) seek relief properly characterized as prospective rather than the

14

functional equivalent of impermissible retrospective relief for alleged violations of federal law, and (ii) are aimed against state officers acting in their official capacities, rather than against the State itself. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Thus the Eleventh Amendment does not bar official capacity claims for forward-looking declaratory or injunctive relief. *Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007).

In examining the nature of the relief sought by Plaintiffs, the Court looks to the substance, not just to the caption, of the matter. *Hill*, 478 F.3d at 1259. The complaint seeks an injunction requiring the Defendants "to comply with state and federal law." But an injunction may not enjoin "all possible breaches of the law." *Hartford–Empire Co. v. United States,* 323 U.S. 386, 410, 65 S.Ct. 373, 89 L.Ed. 322 (1945). And such a vague, broad, and unenforceable injunction would not satisfy the requirements of Rule 65(d). *See Schmidt v. Lessard,* 414 U.S. 473, 476, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974).

In essence, Plaintiffs are merely seeking to undo or address the past harms they allegedly suffered by virtue of the seizure, receivership, and subsequent administrative proceedings relating to those events, rather than to prevent prospective violations of law. Plaintiffs allege no act that Defendants might take in the future which could be addressed by an injunction. Accordingly, the relief can only reasonably be categorized as

retrospective. As such, it does not fall into the *Ex Parte Young* exception to state sovereign immunity. *See Buchheit v. Green*, 705 F.3d 1157, 1159 (10th Cir. 2012).

### 2. OSBC

Plaintiffs also contend that OSBC is not a state entity or an arm of the state so is not entitled to immunity.[4] Eleventh Amendment immunity extends to state entities that are deemed to be "arm[s] of the state." *See Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429–30, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997).

Whether an entity is an "arm of the State" turns on the entity's function and character as determined by state law. *Will,* 491 U.S. at 70. To determine whether an entity constitutes an "arm of the state," the Court examines four factors.

> We look to four primary factors in determining whether an entity constitutes an "arm of the state." *Mt. Healthy [ v. Doyle*], 429 U.S. [274] at 280, 97 S.Ct. 568 [50 L.Ed.2d 471 (1977)]. First, we assess the character ascribed to the entity under state law. Simply stated, we conduct a formalistic survey of state law to ascertain whether the entity is identified as an agency of the state. *See Sturdevant*, 218 F.3d at 1164, 1166. Second, we consider the autonomy accorded the entity under state law. This determination hinges upon the degree of control the state exercises over the entity. *See id.* at 1162, 1164, 1166. Third, we study the entity's finances. Here, we look to the amount of state funding the entity receives and consider whether the entity has the ability to issue bonds or levy taxes on its own behalf. See id. Fourth, we ask whether the entity in question is concerned primarily with local or state affairs. In answering this question, we examine the agency's function, composition, and purpose. *See id.* at 1166, 1168–69.

---

[4] Curiously, Plaintiffs sue OSBC's employees in their official capacity and refer to them as "state officials," yet contend OSBC itself is not an arm of the state.

*Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007).

### a. Character/Autonomy

The statutes which establish the OSBC and delegate the duties to the bank commissioner are found in Chapter 75 of the Kansas Statutes, which is captioned "State Departments, Public Officers and Employees." Although the caption is not binding, it reflects some common sense. The bank commissioner is appointed by the governor, subject to confirmation by the Senate. K.S.A. § 75–1304. Kansas statutes require the secretary of administration to provide the commissioner with suitable office space at Topeka. K.S.A. § 75-1306. The OSBC is thus identified by law as a state office, as its very name suggests. The bank commissioner is required to devote his or her time and attention to the business and duties of the office on a full-time basis. K.S.A. § 75-1304(c). Those duties are prescribed by statutes that provide for some discretion on the part of the commissioner, but only within the boundaries established by the statutes. *See e.g.*, K.S.A. §§ 9-1602, 9-1701, 9-1724, 9-1902. The banking commissioner, and resultingly his office, is by no means autonomous of the state.

### b. Funding

OSBC's manner of financing also points toward its status as an arm of the state. The parties agree that OSBC is a "self-funded regulatory agency," and do not contend that it has any ability to issue bonds or levy taxes on its

17

own behalf. But Kansas statutes require the commissioner to collect fees in the administration of the programs it regulates (the division of banking and the division of consumer and mortgage lending). And the bank commissioner must "remit all moneys received by or for the commissioner from such fees to the state treasurer." K.S.A. § 75-1308.

> Upon receipt of such remittance, the state treasurer shall deposit the entire amount in the state treasury. Ten present of each such deposit shall be credited to the state general fund and the balance shall be credited to the bank commissioner fee fund. All expenditures from the bank commissioner fee fund shall be made in accordance with appropriation acts upon warrants of the director of accounts and reports issued pursuant to vouchers approved by the bank commissioner" or his designee.

*Id.* OSBC's funding is thus entertwined with state coffers.

### c. State v. Local Affairs

Lastly, the OSBC is concerned primarily with state affairs rather than local affairs, as the general purpose of bank regulation is to protect the public. "A bank is a *quasi* public institution." *Knickerbocker Life Ins. Co. v. Pendleton,* 115 U.S. 339, 344, 6 S.Ct. 74, 76 (1885). Maintaining the solvency and liquidity of state banks in Kansas, regulating banks' affairs in the interests of financial order and stability, and encouraging public confidence in the soundness of the banks with which they do business are matters of statewide concern. Accordingly, the Court finds that OSBD is an arm of the state entitled to Eleventh Amendment immunity. For the same reason, the Court finds that OSBD is not a "person" amenable to suit for damages under § 1983.

## V.  Damages Claims, Individual Capacity

Plaintiffs also bring damage claims against Defendants Stork, Splichal, and Thull in their individual capacities. These claims are unaffected by the analysis above, so the Court reaches the defenses of absolute and qualified immunity.

### A.  Absolute Immunity

Defendants first contend that the doctrine of absolute immunity shields them from liability from damages.

Officials who "seek exemption from personal liability" on the basis of absolute immunity bear "the burden of showing that such an exemption is justified by overriding considerations of public policy." *Forrester v. White*, 484 U.S. 219, 22 4, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Judicial immunity extends to judges, to those who take acts prescribed by a judge's order, or to non-judicial officers when their duties have an integral relationship with the judicial process. *See Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (extending absolute immunity to federal hearing examiners and administrative law judges).

Defendants contend that they are administrative officials acting in a quasi-judicial capacity, and "that agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts." *Butz v. Economou*, 438 U.S. 478, 515, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). But Prosecutors enjoy

19

absolute immunity only when acting as advocates for the State, not when

acting in the role of an administrator or when conducting investigations.

> "[A]cts undertaken by a prosecutor in preparing for the initiation of
> judicial proceedings or for trial, and which occur in the course of his
> role as an advocate for the State, are entitled to the protections of
> absolute immunity." *Buckley v. Fitzsimmons,* 509 U.S. 259, ––––, 113
> S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993). The Court in *Buckley*
> established a dichotomy between the prosecutor's role as advocate for
> the State, which demands absolute immunity, and the prosecutor's
> performance of investigative functions, which warrants only qualified
> immunity. *Id.* at ––––, 113 S.Ct. at 2515–16.

*Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994). And Defendants bear

the burden to show that such an exemption "is justified by overriding

considerations of public policy." *Forrester v. White,* 484 U.S. 219, 224, 108

S.Ct. 538, 98 L.Ed.2d 555 (1988); *Thomas v. Kaven*, 765 F.3d 1183,

1191 (10th Cir. 2014).

The Court applies a functional approach, looking at the nature of the

particular acts taken by each defendant:

> "In determining whether particular acts of government officials
> are eligible for absolute immunity, we apply a 'functional approach …
> which looks to the nature of the function performed, not the identity of
> the actor who performed it.' " *Malik v. Arapahoe Cnty. Dep't of Soc.
> Servs.,* 191 F.3d 1306, 1314 (10th Cir. 1999) (quoting *Buckley v.
> Fitzsimmons,* 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209
> (1993)). "The more distant a function is from the judicial process, the
> less likely absolute immunity will attach." *Snell v. Tunnell*, 920 F.2d
> 673, 687 (10th Cir. 1990).

*Thomas,* 765 F.3d at 1192. Defendants will be absolutely immune only when

they are acting in their capacity as legal advocates—initiating court actions

or testifying under oath—not when performing administrative, investigative,

20

or other functions. *Id. See Rehberg v. Paulk*, ___ U.S.___, 132 S.Ct. 1497, 1507, 182 L.Ed.2d 593 (2012) (finding a complaining witness who procures an arrest and initiates a criminal prosecution not entitled to absolute immunity).

### 1. Defendant Thull

Defendant Thull allegedly determined the Bank was insolvent, issued the Declaration of Insolvency, took charge of the Bank, and placed it under FDIC receivership. Absolute immunity is not routinely granted to those who decide to take emergency actions prior to the operation of the judicial process. *See e.g.*, *Thomas,* 765 F.3d at 1193 (denying absolute immunity to doctors and therapist who placed an emergency medical hold on a patient's discharge); *Snell v. Tunnell,* 920 F.2d 673, 690 (10th Cir. 1990) (declining to extend absolute immunity to social worker's efforts to gain protective custody before filing a petition in court); *Spielman v. Hildebrand,* 873 F.2d 1377, 1383 (10th Cir. 1989) (holding that SRS employees were not entitled to absolute immunity in removing a child from a home without a court order because they "acted unilaterally prior to the operation of the judicial process" (internal quotation marks omitted)). The Court finds Defendant Thull's acts are not protected by absolute immunity, as they are too far removed from the judicial process to warrant application of that doctrine. *See Horowitz v. State Bd. of Medical Examiners of the State of Colorado*, 822 F.2d 1508, 1512 (10th Cir.), *cert. denied*, 484 U.S. 964 (1987).

## 2. Defendant Stork

Defendant Stork is alleged only "to have been closely involved in the determination that the Bank was insolvent." Dk. 21, p. 11. Neither party has shown with particularity what her participation was in the relevant events. Because Defendants have not shown that the extent of her participation in the events giving rise to this case was quasi-judicial in nature, she does not enjoy absolute immunity.[5] "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns v. Reed,* 500 U.S. 478, 486–87, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991).

## 3. Defendant Splichal

Defendant Splichal presided over Plaintiff's 2012 administrative hearing before the OSBC, so determined what discovery to permit and decided the parties' cross-motions for summary judgment. These acts are directly related to the conduct of an administrative hearing governed by the KAPA so are quasi-judicial in nature, warranting absolute immunity. The Tenth Circuit has recognized that "officials in administrative hearings can claim the absolute immunity that flows to judicial officers if they are acting in a quasi-judicial fashion." *Guttman v. Khalsa,* 446 F.3d 1027, 1033 (10th Cir. 2006) (finding presiding officer of hearing by Board of Medical Examiners enjoyed absolute immunity) (citing *Butz,* 438 U.S. at 514). *See*

---

[5] Nor do Plaintiffs show that she had the individual participation necessary under § 1983, but the Court does not address this issue since the parties have not raised it.

*Collins v. McClain,* 207 F.Supp.2d 1260, 1262 (D.Kan. 2002) (judicial immunity extends to administrative hearing officers); *Hunt v. Lamb,* 2006 WL 2726808, *3 (D.Kan., Sept. 22, 2006) (same), *appeal dismissed,* 220 Fed.Appx. 887 (10th Cir., Apr. 4, 2007).

For an official at an administrative hearing to enjoy absolute immunity, "(a) the officials' functions must be similar to those involved in the judicial process, (b) the officials' actions must be likely to result in damages lawsuits by disappointed parties, and (c) there must exist sufficient safeguards in the regulatory framework to control unconstitutional conduct." *Guttman,* 446 F.3d at 1033 (quoting *Horwitz,* 822 F.2d at 1513) (internal quotation marks omitted). *See Moore v. Gunnison Valley Hosp,* 310 F.3d 1315, 1317 (10th Cir. 2002) (reciting six-factor test).

These conditions are met as to Defendant Splichal. Deciding who will serve as the presiding officer, how much discovery to permit, whether to hold a hearing or require briefing on summary judgment, when to issue an order on cross-motions on summary judgment motions, and what the content of that order will be are functions similar to those involved in the judicial process. Secondly, his actions are likely to result in damages lawsuits by disappointed parties, as this very suit demonstrates. And the KAPA, K.S.A. § 77-501 *et seq*, and the KJRA, § 77-601 *et seq*, provide sufficient safeguards in the regulatory framework to control unconstitutional conduct of the type alleged here. *See e.g.,* K.S.A. § 77-527 (permitting

23

petitions for review initial orders); § 77-631 (permitting entitlement to

interlocutory judicial review for persons aggrieved by an agency's failure to

act in a timely manner, and permitting subsequent petition for judicial

review of final orders). Even if Defendant Splichal's acts were in error, they

were nevertheless acts performed in furtherance of the judicial process so

are protected. *See Stump v. Sparkman*, 435 U.S. 349, 356–57, 362, 98

S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Morkel,* 513 Fed.Appx. at 730.

Plaintiffs allege that Commissioner Splichal was biased, so the

procedural safeguards were inadequate. But Plaintiffs do not allege any facts

showing actual bias. Instead, Plaintiffs contend that by virtue of

Commissioner Splichal's position as agency head, he was inherently biased

in favor of the agency.

But the KAPA expressly provides that an agency head may act as

presiding officer, stating:

> For all agencies, except for the state court of tax appeals, the agency
> head, one or more members of the agency head or a presiding officer
> assigned by the office of administrative hearings shall be the presiding
> officer.

K.S.A. § 77-514. This is a common procedure in administrative tribunals,

and does not violate due process. *See Withrow v. Larkin,* 421 U.S. 35, 46–

55, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975); Federal Administrative

Procedure Act, 5 U.S.C. § 554(d) (providing that no employee engaged in

investigating or prosecuting may also participate or advise in the

adjudicating function, but expressly exempting from that prohibition 'the

agency or a member or members of the body comprising the agency.').

True, a 'fair trial in a fair tribunal is a basic requirement of due

process,' *In re Murchison*, 349 U.S. 133, 16, 75 S.Ct. 623, 625, 99 L.Ed. 942

(1955), and this applies to administrative agencies as well as to courts.

*Gibson v. Berryhill*, 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488

(1973). But the United States Supreme Court has squarely and repeatedly

held that an administrative agency can be the investigator and the

adjudicator of the same matter without violating due process. *See Withrow,*

421 U.S. at 46–55, and cases cited therein. Here, as in *Withrow,*

> No specific foundation has been presented for suspecting that the
> Board had been prejudiced by its investigation or would be disabled
> from hearing and deciding on the basis of the evidence to be
> presented at the contested hearing. The mere exposure to evidence
> presented in nonadversary investigative procedures is insufficient in
> itself to impugn the fairness of the board members at a later adversary
> hearing. Without a showing to the contrary, state administrators 'are
> assumed to be men of conscience and intellectual discipline, capable of
> judging a particular controversy fairly on the basis of its own
> circumstances.' *United States v. Morgan*, 313 U.S. 409, 421, 61 S.Ct.
> 999, 1004, 85 L.Ed. 1429 (1941).

*Withrow,* 421 U.S. at 55. Defendant Splichal is thus entitled to absolute

immunity.

### B. Qualified Immunity

Defendants Thull, Splichal, Schuster, and Stork additionally contend

that their acts are entitled to qualified immunity.

> A government official sued under §1983 is entitled to qualified
> immunity unless the official violated a statutory or constitutional right

25

that was clearly established at the time of the challenged conduct. See *Ashcroft* v. *al-Kidd*, 563 U. S. ___, ___ (2011) (slip op., at 3). A right is clearly established only if its contours are sufficiently clear that "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U. S. 635, 640 (1987). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U. S., at ___ (slip op., at 9). This doctrine "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.*, at ___ (slip op., at 12) (quoting *Malley* v. *Briggs*, 475 U. S. 335, 341 (1986)).

*Carroll v. Carman, et ux*, 574 U.S. __, slip op. 2014 WL 5798628 (Nov. 10, 2014).

Once a defendant raises the defense of qualified immunity, the plaintiff must "come forward with facts or allegations to show both that the defendant's alleged conduct violated the law and that law was clearly established when the alleged violation occurred." *Pueblo Neighborhood Health Ctrs. v. Losavio,* 847 F.2d 642, 646 (10th Cir. 1988). The defendant prevails unless such a showing is made on both elements. *Snell*, 920 F.2d at 696. In order "for a right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Price–Cornelison v. Brooks,* 524 F.3d 1103, 1108 (10th Cir. 2008).

Plaintiffs contend that Defendants violated their clearly-established right to be heard at a meaningful time in a meaningful manner by seizing the Bank without justification, notice or a pre-deprivation hearing, by

26

denying them a post-deprivation hearing for over three years, by providing a hearing at which the presiding officer had an inherent conflict of interest and did not permit Plaintiffs to depose the key witness against them, and by denying Plaintiffs judicial review of the procedurally-deficient hearing. Dk. 21 p. 27. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

But general propositions of law are insufficient to show a clearly established right. *Ashcroft v. al-Kidd,* ___ U.S. ___, 131 S.Ct. 2074, 2084, 179 L.Ed.2d 1149 (2011).

> ... the right allegedly violated must be established, " 'not as a broad general proposition,' " *Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) *(per curiam),* but in a "particularized" sense so that the "contours" of the right are clear to a reasonable official, *Anderson, supra,* at 640, 107 S.Ct. 3034.

*Reichle v. Howards*, 566 U.S. ___, 132 S.Ct. 2088, 2094, 182 L.Ed.2d 985 (2012).

### 1. Lack of pre-deprivation hearing

Assuming that Plaintiffs had a protected interest in the matters seized by Defendants, the Court first asks whether Defendants violated clearly-established law by not holding a pre-deprivation hearing.

"The mere fact that the state or its authorities acquire possession or control of property as a preliminary step to the judicial determination of

asserted rights in the property is not a denial of due process. (Cases

omitted.)" *Anderson Nat. Bank v. Luckett*, 321 U.S. 233, 247, 64 S.Ct. 599,

606-607 (1944) (holding the State Commissioner of Revenue could transfer

abandoned bank deposits to State Department of Revenue). Plaintiffs rely on

the law that "[g]enerally, the government may not deprive someone of a

protected property right without first conducting "some sort of hearing."

*Camuglia v. City of Albuquerque,* 448 F.3d 1214, 1220 (10th Cir. 2006). But

that rule is not absolute, particularly in matters of public health and safety.

> Due process, however, "is flexible and calls only for such procedural
> protections as the particular situation demands." *Id.* (quoting *Mathews
> v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).
> For example, "[i]n matters of public health and safety, the Supreme
> Court has long recognized that the government must act quickly." *Id.*

*Collvins v. Hackford*, 523 Fed.Appx. 515, 518, 2013 WL 1319525, 3 (10th

Cir. 2013).

The Tenth Circuit has found public health and safety reasons justifying

the lack of a pre-deprivation hearing in many cases, including the following:

the government closed a restaurant for improper use of pesticides,

*Camuglia,* 448 F.3d 1214; the school district suspended an employee for

errors causing a substantial budget deficit, *Kirkland v. St. Vrain Valley Sch.

Dist. No. Re–1J,* 464 F.3d 1182, 1194 (10th Cir. 2006); the city quarantined

animals suspected to have rabies, *Clark v. City of Draper*, 168 F.3d 1185,

1189–90 (10th Cir. 1999); the state investigated a child care center for

claims of abuse, *Ward v. Anderson*, 494 F.3d 929, 937 (10th Cir. 2007); and

the state suspended a boiler inspector's certificate because of school safety concerns, *Collvins,* 523 Fed.Appx. 515 (10th Cir. 2013).

Similarly, the United States Supreme Court has held that no pre-deprivation hearing is required when a bank is placed under conservatorship to guard against its failure. *See Fahey v. Mallonee*, 332 U.S. 245, 254 (1947). A reasonable person would have known this law. But Plaintiffs contend that *Fahey* provides no justification for Defendants' acts because a receiver takes permanent control of the property, while a conservator does so only for a limited period of time before returning control to the owner. But even assuming this is so, Defendants have not explained how this distinction warrants a pre-deprivation hearing, and have not shown where this distinction is made in clearly-established law. See *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 821 F.Supp. 1414 (D.Kan. 1993) ("without exception, the courts agree that in this setting a post-deprivation opportunity for judicial review extends all the procedural protection required by the Constitution."). Accordingly, Plaintiffs have failed to show that the Defendant's failure to provide a pre-deprivation hearing violated clearly-established law.

## 2.  Delay in post-deprivation hearing

Plaintiffs received an opportunity for a post-deprivation hearing and have not shown any prejudice by virtue of the delay in receiving it. Instead,

29

Plaintiffs contend that a three-year delay[6] is *per se* unconstitutional.

Supreme Court cases establish the importance of providing a prompt post-deprivation hearing where no pre-deprivation hearing is held. *See e.g.*, *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 606, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 606–07, 95 S.Ct., 719, 722–723, 42 L.Ed.2d 751 (1975); *Barry v. Barchi*, 443 U.S. 55, 63-64, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979)). *See generally Connecticut v. Doehr*, 501 U.S. 1, 22, 111 S.Ct. 2105, 2118 (1991) ("Our cases have repeatedly emphasized the importance of providing a prompt postdeprivation hearing at the very least.") "[E]ven when … a pre-hearing removal is justified, the state must act promptly to provide a post-removal hearing." *Gomes v. Wood,* 451 F.3d 1122, 1128 (10th Cir. 2006) (quotations omitted).

But merely relying on case law requiring a post-deprivation hearing to be "prompt" is insufficient. *Collvins*, at 520. Plaintiffs must cite case law more specifically applicable.

As an initial matter, case law from the Supreme Court and Tenth Circuit presents no bright-line rules as to when a delay becomes unconstitutional. In fact in one case, the Supreme Court held that a 9–month delay in holding a hearing is not per se unconstitutional. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 547, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Rather, the precedent indicates that the determination of the constitutionality of a delay is a fact-intensive analysis based on the factors described [in] *Mallen,* 486 U.S. at 242,

---

[6] Plaintiffs do not show the court how they calculate that period of time. The counting presumably beings on the date of seizure, August of 2008, and ends three years thereafter but the record does not reflect a hearing or other event in August of 2011

108 S.Ct. 1780. There is no precedent sufficiently on point with this case that could have put Defendants on notice that the delay was unconstitutional.

*Collvins*, 523 Fed.Appx. at 520. The same is true here.

"[E]ven though there is a point at which an unjustified delay in completing a post-deprivation proceeding 'would become a constitutional violation,' *Cleveland Bd. of Education v. Loudermill,* 470 U.S. S. 532, 547, 105 S.Ct. 1487, 1496, 84 L.Ed.2d 494 (1985), the significance of such a delay cannot be evaluated in a vacuum." *Federal Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 242, 108 S.Ct. 1780, 1788 (1988). In determining how long a delay is justified in affording a post-deprivation hearing and decision, the Court examines a number of factors. *Mallen*, 486 U.S. at 242. These include "1) the importance of the private interest and the harm to this interest occasioned by delay; 2) the justification offered by the Government for delay and its relation to the underlying governmental interest; and 3) the likelihood that the interim decision may have been mistaken." *Id.*

### a. CFC's Interest

CFC has a valid interest in avoiding the arbitrary seizure of its business, even if that seizure lasts only for a limited time. *See Connecticut v. Doehr,* 501 U.S. 1, 11–13, 111 S.Ct. 2105, 2113, 115 L.Ed.2d 1 (1991). But Banks are subject to constant and intensive government regulation, so the banks' interest, and thus CFC's interest, is diminished.

### b. Defendants' Interest

The State has a substantial interest in in protecting depositors and upholding public faith in financial institutions, which compels it to move quickly to seize insolvent institutions. *Cf, Franklin*, 821 F.Supp. at 1423 (examining the federal government's "compelling interest in regulating banks."). The seizure of an insolvent bank and the appointment of the FDIC as receiver are integral parts of the Kansas statutory plan to protect depositors and uphold the public confidence in financial institutions. *Cf, Mallen*, 486 U.S. at 241. Requiring a pre-seizure hearing could expose both depositors and the FDIC insurance fund to further losses from the continued operation of a failed institution by its management. *Haralson v. Federal Home Loan Bank Bd.*, 837 F.2d 1123, 1127 (D.C.Cir.1988). Equally strong is the Government's interest in swiftly disposing of assets and liabilities after a seizure takes place in order to ensure the smooth transfer of a bank's deposits and branches to other institutions, as well as to minimize losses for both depositors and taxpayers that could occur if the Government had to hold on to a bank's assets whose value is declining. *Cf.* 58 Fed.Reg. 6,363, 6,365 (1993) (noting that the value of an institution's deposits depends in part upon the stability of those deposits); 57 Fed.Reg. 11,005, 11,006 (1992) (same).

In other contexts, the Supreme Court has found the government's interest in protecting depositors and preserving the integrity of the banking

industry sufficiently strong to justify seizing a bank, suspending a bank's officers, and attaching liens against the property of a bank's stockholders without a prior hearing. *Fahey,* 332 U.S. at 253–54 (upholding appointment of conservator of a bank during an investigation into unsound banking practices, with administrative hearing provided after the seizure); *FDIC v. Mallen*, 486 U.S. 230, 241–42, 108 S.Ct. 1780, 1788–89, 100 L.Ed.2d 265 (1988) (upholding suspension of indicted bank officer where the government would grant an administrative hearing within 30 days of a request to do so); *Coffin Bros. v. Bennett*, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768 (1928) (upholding the government's power to place a lien on the property of a bank's stockholders to pay depositors of a failed bank, where a post-attachment trial would serve as the hearing).

The State's interests here are no less compelling. Recognizing that swift action is often necessary to minimize economic loss in instances of troubled and failing financial institutions, the legislature has given a great amount of control and authority to the OSBC in the event of such crises. *See generally* K.S.A. § 9-1807 to 9-1918.

And the record shows justification for much of the delay in granting Plaintiffs a post-deprivation hearing. Within a month after the seizure, in September of 2008, the Plaintiffs filed a petition for judicial review which was not decided until March of 2010. That 18-month delay was attributable to the state district court rather than to any Defendant, and was spent

giving Plaintiffs the process they had requested. Accordingly, that eighteen month delay was justifiable. Similarly, Plaintiffs fail to show why any post-remand time (from March 29, 2010 to April 18, 2012) expended in the reasonable progress of administrative proceedings (including conducting discovery, compiling facts, briefing cross motions for summary judgment, and awaiting a decision) should be counted as unjustified delay.

### c. Risk of Error

As for the risk of error, the administrative and judicial review process included numerous safeguards against an arbitrary seizure of the Bank. From the very beginning, CFC had multiple opportunities, ranging from informal meetings to inspections to issuance of the cease and desist order, by which to challenge arbitrary actions. CFC chose to waive any challenge to issuance of the cease and desist order, but was necessarily on notice of the severity of the Bank's financial condition. The subsequent Declaration told Plaintiffs they had 30 days in which to file a petition for judicial review, told them where to file it, and told them who the agency officer was to receive service of process on behalf of the OSBC. Dk. 15, Exh. 1. Plaintiffs availed themselves of that opportunity, and on remand participated in administrative hearing procedures. When those procedures were completed in Defendants' favor, Plaintiffs once again appealed by filing a petition for judicial review of the administrative action (summary judgment decision) with the State district court. When that decision favored the Defendants, Plaintiffs appealed

34

it to the Kansas Court of Appeals, and upon losing yet again filed a petition for review with the Kansas Supreme Court. Given the events preceding the seizure and receivership, and the multiple layers of procedural protection afforded to Plaintiffs by virtue of the KAPA and KJRA after the seizure and receivership, the risk of error is substantially limited.

The determination of the constitutionality of a delay is a fact-intensive analysis, not a bright-line rule. In light of the Government's need to act swiftly, the limited nature of CFC's interest, and the procedures in place to minimize the risk of an erroneous decision, the Court finds no due process defect in the timing of CFC's hearing that would have been obvious to reasonable persons. Plaintiffs provide no well-established law showing that a reasonable person should have known that the delay here was unconstitutionally lengthy under the circumstances shown by the record.

### 3.  Hearing Officer Bias

Plaintiffs' claim that Defendant Splichal was biased when serving as the presiding officer throughout their administrative proceedings has been addressed above. Based on case law contradicting Plaintiffs' position, Plaintiffs cannot show that reasonable persons should have known that having the agency head serve as the deciding officer during the post-deprivation proceedings violated clearly-established law.

### 4.  Lack of Discovery

Plaintiffs also complain that although they were permitted to depose Defendant Stork, they were not permitted to depose Commissioner Thull who decided to seize the Bank. But Plaintiffs do not explain what reason they were given for not being permitted to depose Defendant Thull, what they hoped to learn from this desired discovery, or how they were prejudiced by not deposing Thull.

Administrative proceedings may conform to the due process requirements of the fifth amendment without granting the full panoply of pretrial discovery weapons available to litigants in federal court. Parties to judicial or quasi-judicial proceedings are not entitled to discovery as a matter of constitutional right. To the contrary, courts generally accord agencies broad discretion in fashioning hearing procedures. *Vermont Yankee Nuclear Power Corp. v. NRDC, Inc.,* 435 U.S. 519, 543, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460 (1978). Even where a case is remanded for an insufficient record, the agency should normally be allowed to "exercise its administrative discretion in deciding how, in light of internal organization considerations, it may best proceed to develop the needed evidence and how its prior decision should be modified in light of such evidence as develops." *FPC v. Transcontinental Gas Pipe Line Corp.*, 423 U.S. 326, 333, 96 S.Ct. 579, 46 L.Ed.2d 533 (1976).

In Kansas, administrative discovery decisions, by statute, are within the discretion of the presiding officer, who may specify the times during which the parties may pursue discovery and may issue protective orders. *See* K.S.A. 77-522. A person aggrieved by a lack of discovery has a right to petition for review of an initial order, as well as a subsequent right to petition for review of final orders. *See* K.S.A. § 77-527, 77-601 *et seq*. Plaintiffs do not show any law clearly establishing that due process requires administrative hearing officers to permit the parties to depose whomever they wish or to engage in unlimited discovery during administrative proceedings.

Under the circumstances shown by the record, Defendants are entitled to qualified immunity for this and other discovery decisions made during Plaintiffs' administrative proceedings. "Because neither the Supreme Court nor the Tenth Circuit has any precedent that would have put Defendants on notice that their actions may have been unconstitutional, they are entitled to qualified immunity." *Collvins*, 523 Fed.Appx. at 520-21, 2013 WL 1319525, 5.

### 5.  Denial of judicial review

Lastly, Plaintiffs allege that Defendants denied them judicial review of the procedurally-deficient hearing. The record reveals, however, that Plaintiffs twice received judicial review – once in September of 2008 approximately a month after the seizure, and once after Commissioner

37

Splichal's decision on the cross-motions for summary judgment, which decision specifically stated that the Bank and CFC had the right to petition for judicial review.

Plaintiffs apparently complain of the fact that the OSBC, in its motion to dismiss Plaintiffs' second petition for review, contended that no remedy was available. The state court agreed so dismissed the petitions as moot on January 30, 2013. But Plaintiffs show no clearly established law that Defendants allegedly violated by taking such a legal position. Accordingly, Defendants are entitled to qualified immunity on each of the claims made in this case.

## VI. Waiver of Due Process

Defendants contend throughout their brief that Plaintiffs expressly waived their due process rights by signing the resolution, the consent agreement, and the cease and desist order. But Defendants have not shown that the waiver extends to the enforcement proceedings challenged in this lawsuit.

The Bank's resolution consented to the cease and desist order, and waived

> any right to such a notice of charges, a hearing, defenses, findings of fact, conclusions of law, a recommended decision by an Administrative Law Judge or other hearing officer, exceptions and briefs with respect to such recommended decision, and judicial review under Kansas Statutes Annotated § 77-601 et seq., or any other challenge to the validity of the Order.

Dk. 15, Exh. 2. *Id.*, p. 32. The cease and desist order itself stated that the Bank consented to issuance of the order "solely for the purpose of this proceeding," and that the Bank waived its procedural due process rights and its rights under the KAPA and the KJRA "or any other challenge to the validity of the ORDER." *Id*, p. 35. It defined "the Order" as the cease and desist order. *Id,* p. 34.

The plain language appears to waive only the procedures to determine whether a cease and desist order should be issued. *See* K.S.A. 9-1807 (providing for a hearing in the latter event). Accordingly, for purposes of this motion only, the Court finds no waiver.

## VII. CFC - Real Party in Interest

Defendants contend that CFC, as the sole shareholder of the Bank, is not the real party in interest. Defendants state that CFC was not a party to the OSBC or FDIC's actions or agreements, and suffered no injury in fact. Defendants claim that "injury arising solely out of harm done to a subsidiary corporation is generally insufficient to confer standing or status as real party in interest on a parent corporation," and that a parent corporation cannot pierce the corporate veil to advance the claims of its subsidiary. Dk. 15, p. 31-32.

CFC counters that the injury did not solely arise from harm done to its subsidiary, but that it was injured because its ownership interest in the Bank effectively ceased to exist upon Defendants' tender of the Bank to

receivership. Dk. 21, p. 31. It adds that the policy behind Rule 17(a)'s real party in interest requirement is met because the only parties harmed by Defendants' seizure are joined as Plaintiffs, so Defendants run no risk of facing a later action from another party entitled to recover. The court agrees. Where, as here, the acts challenged are the seizure, the appointing of a receiver, and the procedures by which to do to, CFC has sufficiently alleged its own injury, despite the fact that title to the Bank's assets vested in the FDIC upon its acceptance of the appointment as receiver.

IT IS THEREFORE ORDERED that Defendant's motion to dismiss is granted.

Dated this 18th day of November, 2014, at Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge