IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

COLUMBIAN FINANCIAL
CORPORATION,

            Plaintiff

    vs.                              Case No. 14-2168-SAC

MICHELLE W. BOWMAN, in her
official capacity as Bank
Commissioner of Kansas, et al,

            Defendants.


MEMORANDUM AND ORDER

        The plaintiff Columbian Financial Corporation ("CFC"), as the sole

shareholder of Columbian Bank and Trust Company ("Bank"), originally

brought this action with the Bank against the Office of the Kansas State

Bank Commissioner ("OSBC") and four commission officials under 42 U.S.C.

§ 1983. The action principally alleged denial of due process from the OSCB

declaring the Bank insolvent, seizing the Bank's assets, and doing so without

providing adequate constitutional protections and remedies before and after

the declaration and seizure. Twice this court granted motions to dismiss in

favor of the defendants, and twice the Tenth Circuit returned the case for

further consideration. An understanding of these two instances is helpful

background for framing the pending dispositive motion.

On the first motion to dismiss, the district court agreed that abstention under *Younger v. Harris*, 401 U.S. 37 (1971), required the plaintiff's claims for injunctive and declaratory relief to be dismissed without prejudice due to the pending state court matters. ECF# 30, pp. 12-13. The court dismissed the Bank as not a person capable of bringing a § 1983 action and dismissed the OSBC as not a person amenable to suit under § 1983. *Id*. at pp. 13-14, 18. The court held that the defendant Edwin G. Splichal was entitled to absolute immunity for his role in presiding over the 2012 administrative hearing, in determining what discovery to allow, and in deciding the parties' cross-motions for summary judgment. *Id*. at 22-25. Finally, on grounds of qualified immunity, the court dismissed the individual capacity actions against the defendant J. Thomas Thull, the former bank commissioner who issued the declaration of insolvency; the defendant Deryl K. Schuster, the bank commissioner coming into office in April 2014; and the defendant Judi Stork, the acting bank commissioner and deputy bank commissioner during the relevant period. ECF# 30, pp. 25-38. The plaintiffs appealed the *Younger* abstention ruling and the qualified immunity rulings in favor of the defendants Stork and Thull.

While this order was on appeal, the circumstances of this case for *Younger* abstention changed when the pending state proceedings terminated in favor of the defendants. Consequently, the Tenth Circuit "vacate[d] dismissal of the equitable claims and remand[ed] these claims to

the district court so that it can reconsider them without the need to abstain now that the state proceedings have ended." *Columbian Financial Corp. v. Stork*, 811 F.3d 390, 395 (10th Cir. 2016) (citation omitted). The circuit court de novo reviewed and affirmed the district court's dismissal of the defendants Stork and Thull based on qualified immunity. The circuit court also found that the seizure of the bank's assets and the appointment of a receiver without a prior hearing did not violate a clearly established right and that the delay in the post-deprivation hearing did not violate a clearly established right.

On remand, the plaintiff filed an amended complaint with leave of the court granted over the defendants' objections. ECF## 63 and 66. The defendants then filed their next motion to dismiss the first amended complaint asserting the lack of jurisdiction and other legal defenses, including the failure to state a claim for relief. ECF# 69. Their first issue was that the plaintiff's remaining equitable action against the defendants in their official capacities was barred by the Eleventh Amendment. The defendants specifically argued the plaintiffs were not seeking prospective relief against an ongoing violation within the exception created by *Ex Parte Young*, 209 U.S. 123 (1908). Instead, the plaintiffs were seeking "backward-looking relief" against OSBC's order of seizure and receivership. ECF# 70, pp. 11-16. Based on the parties' arguments as briefed and presented to it, the district court granted the defendants' motion to dismiss for Eleventh Amendment

immunity and did not address the balance of the issues presented in the defendants' motion to dismiss.

On appeal, the Tenth Circuit construed the plaintiff's amended complaint to "allege[] an ongoing violation of federal law and [to] seek[] from the federal court only prospective relief and other relief ancillary thereto." *Columbian Financial Corporation v. Stork*, 702 Fed. Appx. 717, 721 (10th Cir. Jul. 25, 2017). The panel understood the plaintiff to be alleging an ongoing due process violation from the denial of "a hearing before an impartial hearing officer after sufficient opportunity for discovery." *Id.*[1] Citing precedent that involved claims such as ongoing exclusion from school, from employment, and from an approved vendors' list, as well as the ongoing denial of a hearing in each instance, the panel saw no distinction between them and the plaintiff's claim here of just the ongoing denial of a constitutionally adequate due process hearing. *Id.* at 721-22. The panel believed that an injunction giving the plaintiff another hearing fell within the *Young* exception. Finally, on the question of whether any meaningful relief was available here pursuant to the *Young* exception, Columbian argued for the first time on appeal:

> Columbian contends that its right to a constitutionally adequate hearing exists independently of its ability to have the Bank's assets restored. Moreover, it maintains that a partial remedy is still available. Columbian notes that, as a consequence of the seizure, it lost not only

---

[1] In footnotes, the Tenth Circuit summarized the plaintiff's allegations that Splichal was not a neutral judge over the due process hearing and that Splichal denied them the opportunity to depose Thull, "the sole decision-maker regarding the Bank's closure." 702 Fed. Appx. at 721 n. 2 and 3.

the Bank's assets but also the Bank's charter to conduct future business in Kansas. And furthermore, Columbian argues that the Declaration's insolvency finding could be held against in in a future application for a Kansas banking charter. Thus, Columbian argues that an opportunity to clear its name in a proper due process hearing would have "some effect in the real world" sufficient to avoid mootness of its procedural due process claim. (citation omitted).

702 Fed. Appx. at 723. The Tenth Circuit held that "Columbian identifies injuries that could be redressed by its requested relief—specifically, a new hearing with adequate procedural protections—which could overturn the insolvency finding and restore the Bank's charter." *Id*. The district court's judgment was reversed and remanded for further proceedings consistent with the Circuit's order and judgment.

Now on remand, there has been a substitution of defendants with Michelle W. Bowman replacing Deryl K. Schuster for the official capacity action against the Bank Commissioner and with the titled position of Deputy Bank Commissioner replacing Judi Stork.  ECF# 101. The plaintiff has propounded discovery requests for which the defendant Bowman sought an extension of the response deadline and then sought a stay after filing a dispositive motion. ECF## 102, 104 and 106. The Magistrate Judge denied the stay request, and review of that ruling is also pending before this court. ECF# 121. The district court has entered an order staying discovery pending the filing of this order. ECF# 130. With the matters fully briefed and before the court, the court takes up the defendant Bowman's motion for summary judgment, or in the alternative, judgment on the pleadings. ECF# 104.

*Judicial Notice*

In her motion, the defendant asks the court to take judicial notice of all proceedings in this litigation and all related commission proceedings and state court proceedings. The court may take judicial notice of state court documents. *See Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008). In doing so, the court will follow the Tenth Circuit's holding:

> However, facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n. 1 (10th Cir. 2004) (citing 27A Fed. Proc., L.Ed. § 62:520 (2003)). This allows the court to "take judicial notice of its own files and records, as well as facts which are a matter of public record." *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001). However, "[t]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

*Tal v. Hogan*, 453 F.3d 1244, 1265 (10th Cir. 2006), *cert. denied*, 549 U.S. 2007); see *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1213 (10th Cir. 2012) ("The contents of an administrative agency's publicly available files, after all, traditionally qualify for judicial notice, even when the truthfulness of the documents on file is another matter. (citations omitted)."). Thus, the court will take judicial notice of the existence and content of the orders and pleadings submitted and publicly filed and take note of the content of what was argued and what was decided. See *Kaufman*

*v. Miller*, 2013 WL 4446977, at *2 (10th Cir. Aug. 21, 2013) ("[W]e can take judicial notice of the contents of the habeas petition to determine whether this claim had been presented in the district court. See *Guttman v. Khalsa*, 669 F.3d 1101, 1130 n. 5 (10th Cir.2012)."). But, the court will not assume the truth or correctness of the matters or facts alleged, asserted, or decided therein.

*Legal Standards Governing Motion*

Rule 56 mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323, 106 S.Ct. 2548. This does not mean the moving party must negate the other side's claims or defenses through affidavits. *Id*. Upon a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings, that is, mere allegations or denials, and set forth specific facts showing a genuine issue of

material fact for trial, relying upon the types of evidentiary materials contemplated by Rule 56. *Id*.

The court decides the motion "through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, a factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Id. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252, 106 S.Ct. 2505. The purpose of Rule 56 "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). At the summary judgment stage, the court is not to be weighing evidence, crediting some over other, or determining the truth of disputed matters, but only deciding if a genuine issue for trial exists. *Tolan v. Cotton*, –––U.S. ––––, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014). The court performs this task with a view of the evidence that favors most the party opposing summary judgment. *Id*. Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Liberty Lobby*, 477 U.S. at 250–51, 106 S.Ct. 2505. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or

whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52, 106 S.Ct. 2505.

The defendants move, in the alternative, for judgment on the pleadings. "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)," *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000), and the same standards govern motions under either rule, *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003). On either motion, the court considers only the contents of the complaint. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). The court accepts as true "all well-pleaded factual allegations in a complaint and view[s] these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010). To withstand a Rule 12(b)(6) motion, "a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Al–Owhali v. Holder*, 687 F.3d 1236, 1239 (10th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal citation and quotation marks omitted). "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is

liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

*Background*

Rather than restate all the uncontested facts appearing in this court's prior orders, the Tenth Circuit's opinions, and the parties' current and past filings in this case, the court provides the following summary as sufficient for the context of its ruling. The court does not share the plaintiff's position that its § 1983 action constitutes a routine federal case for which discovery should occur before any summary judgment matters are decided. By taking judicial notice of the publicly-filed records which both sides have submitted as exhibits in this dismissal/summary judgment proceeding, the court finds itself fully informed of all relevant rulings and facts and is well-positioned to rule on the arguments presented without the delay and burden of additional discovery being shouldered. As reflected in what follows, the court has been careful to review the state court filings, because the plaintiff's federal claims are being uniquely presented in an apparent effort to avoid the res judicata/collateral estoppel bar.

In July of 2008, the state-chartered Bank with federal-insured deposits consented to the entry of an "Order to Cease and Desist" which required the Bank to cease and desist from engaging in the listed "unsafe or unsound banking practices and violations" and to modify its operations and policies in numerous areas and to report these changes. ECF# 70-1. CFC has

10

alleged that the Bank complied with this order revising its policies and submitting the required reports and analyses which demonstrated the Bank's financial strength and liquidity. On August 22, 2008, without additional notice or a prior hearing, then-Bank Commissioner J. Thomas Thull issued a Declaration of Insolvency and Tender of Receivership ("Declaration") finding, "the Commissioner is satisfied that the bank is insolvent within the meaning of K.S.A. 9-1902(2) and as such, the situation presents an immediate danger to the public welfare justifying uses of this emergency proceeding." ECF# 117-6, p. 2. The Commissioner's Declaration quoted this Kansas statute as providing, "A bank or trust company shall be deemed to be insolvent . . . (2) when it is unable to meet the demands of its creditors in the usual and customary manner." *Id*. The Declaration directed that the Commissioner was taking charge of Bank's "properties and assets." *Id*. The Declaration further appointed the Federal Deposit Insurance Corporation as receiver after finding that the Bank "cannot resume business or liquidate its indebtedness to the satisfaction of depositors and creditors and knowing further that the deposits of said bank are insured by the Federal Deposit Insurance Corporation." *Id.* On the same day as this seizure, the FDIC followed through with a pre-arranged sale of a substantial portion of the Bank's assets.

The Declaration also notified the Bank it had "30 days to file an appeal petition for judicial review under the Kansas Judicial Review Act,

K.S.A. § 77-602 *et seq.*" *Id.* at 3. A timely petition for review was filed. The

petitioners Bank and CFC argued, in part, that the Bank "was not, in fact,

insolvent within the meaning of" state law. ECF# 117-7, pp. 2-3. Eighteen

months later in March of 2010, the state district court entered a judgment

"denying relief to the" plaintiffs except for "remanding this matter back to

the State Banking Commissioner and the State Banking Board for further

proceedings consistent with" the district court's fifty-two-page opinion. ECF#

117-9, p, 53. The district court's opinion included an interpretation of the

state statute in question:

> Thus, Petitioners'/Appellants' assertion that the phrase "is
> unable", as used in K.S.A. 9-1902, means "insolvency" in actual
> fact is too strict of a standard by which to measure the authority
> of the Commissioner to *seize* a banking institution.
>
> . . . .
>
> Thus, here, the legal question before the Court, properly
> determined, would be not whether the Columbian State Bank
> and Trust Company was, in fact, insolvent, only whether it
> reasonably appeared to be so at seizure and that based on
> examination and reports available to the Commissioner at the
> time he was 'satisfied that it . . . cannot sufficiently . . . resume
> business or liquidate . . . .'" (K.S.A. 9-1905).

ECF# 117-9, pp. 35-36, 40. As these quotations show, the district court

interpreted the relevant Kansas statutes and established the governing legal

standard on insolvency which was followed throughout the administrative

review proceedings.

CFC's petition for judicial review also asserted the denial of due

process (lack of notice and hearing) in violation of the Fourteenth

Amendment and 42 U.S.C. § 1983. ECF# 117-7, pp. 4-5. On this due

process issue, the state district court's opinion included these conclusions of

law:

> It seems clear that bank seizures, given their exigency, have long been excused from any notice or pre-hearing seizure requirement (citation omitted). However, such is not necessarily the case post-seizure. Some substantive post-deprivation review is required in order to constitutionally ground the decision. (citation omitted). A bank seizure is not excepted. In *Woods v. Federal Home Loan Bank Bd.*, 825 F.2d 1400 (5th Cir. 1987), *cert. denied*, 485 959, 99 L.Ed.2d 422 (1988), a review of the administrative record and an opportunity to submit evidentiary matters under standard summary judgment rules, by which the case was presented to the Court, was deemed constitutionally sufficient, particularly in light of the fact the financial institution had been the subject of in-house scrutiny by regulators for four years and was the subject of a formal cease and desist order. *Id.* at pp. 1410-1413. . . .

> . . . .

> Thus, since to date a seemingly constitutionally adequate post-seizure procedure has been omitted here, and the consequences of such an omission, given the record before the court, is to disable an adequate remedy or adequate review, the justification or remedy for such an omission needs further examination. . . .

> Here, while the Commissioner, as noted, purported to act under the emergency procedures granted in the Kansas Administrative Procedure Act (K.S.A. 77-536), he, to the Court's knowledge, has not yet followed through with a post-deprivation hearing (K.S.A. 77-536(e)). If this is the case, the Court believes this was error.

> . . . Given the breadth of circumstances affecting licensure that invoke a hearing when a license is effected, clearly, then, a bank's seizure and the effective termination of its operation as a going banking concern, as occurred in present case, should command a hearing by the directive of K.S.A. 77-512. . . .

If this is correct, then, at best here, Petitioners are before the Court appealing "non-final agency action" as defined by K.S.A. 77-607(b)(2). . . .

. . . . Thus, postponement of judicial review of the limited issue, as available in this proceeding, provokes no more inadequate remedy than that which presently exists nor has substantial harm been shown to probably have been increased by such a postponement (K.S.A. 77-608(b)). Further, delay for a K.S.A. 77-536(e) post-deprivation hearing certainly offends no public benefit disproportionately. *Id*. As such, Petitioners' petition, seen as a petition for interlocutory review, would fail for the reason that K.S.A. 77-608's "non-final", interim, relief could simply not be sustained under K.S.A. 77-608(b) in fact or law at the time the petition in this case was filed.

. . . .

Further, as noted earlier, given that the record in this case lacks any precedent and substantive constitutional development and grounding that would be essential for meaningful judicial review or that could command constitutional respect for any judicial order entered, a remand to the agency for implementation of the hearing process contemplated by K.S.A. 77-536(e) seems warranted from any perspective. Once such proceedings are concluded, whether by hearing, meaningful stipulation, summary judgment, or admission, only then can judicial review, if elected, be meaningfully and constitutionally exercised. However, this said, any future remedy as previously discussed would still be grossly limited.

ECF# 117-9, pp. 44-52. Besides remanding the matter for a post-seizure hearing under K.S.A. § 77-536, the district court, as shown above, concluded as a matter of law that a substantive review here post-seizure would be constitutionally adequate, that such a procedure was provided by this statute, and that postponing judicial review for this hearing would not make the "grossly limited" future remedies any more "grossly limited" than

they already were. These rulings were necessarily part of the state judicial

review proceedings here.

Around two years later, in April of 2012, the OSBC issued its

sixteen-page decision granting summary judgment against CFC and the

Bank. ECF# 117-13. In that decision, then-Commissioner Splichal

characterized the issues in dispute as these:

> The sole issues in dispute as a matter of law are (1)
> whether Columbian Bank was insolvent on August 22, 2008,
> when the former Bank Commissioner issued a Declaration of
> Insolvency and (2) whether there were grounds to appoint the
> FDIC as Receiver and for the FDIC to continue serving as
> Receiver. The parties are all in agreement that Summary
> Judgment as a matter of law is appropriate as there are no
> genuine material facts in dispute. What is disputed between the
> parties are the conclusions that should be drawn from the facts.

ECF# 117-13, p. 9. In addressing the Bank's arguments against the OSBC's

failure to include its adequate sources of liquidity in the formula, Splichal

concluded, in part:

> The liquidity position of Columbian Bank deteriorated even
> further leading up to its closure. Bankers Bank of Kansas
> withdrew its line of credit to Columbian Bank. The FHLB froze
> their line of credit. AVIVA (the bank's largest depositor) was in
> the process of withdrawing its funds by the end of the third
> quarter that year. By July 30, 2008, Columbian Bank was
> notified the FDIC was taking bids for the sale of the bank's
> deposit accounts. The bank was in dire condition.

> Columbian Bank viewed its liquidity position through rose-
> colored glasses. The fact that the bank had not improved its
> liquidity position prior to the closing, despite having had months
> of advance notice regarding the regulator's stance on its liquidity
> position, further justifies viewing the contingent liquidity sources
> with skepticism and not including them in the liquidity formula. If
> the liquidity sources were as readily available as Columbian Bank

now contends, then it presumably could have and should have secured them well in advance of the closing. In fact, Columbian Bank's brokered deposit plan dated August 15, 2008, recognized the risks involved with the speculative sources of liquidity. As such, the brokered deposit plan provides additional support for the methodology used by the OSBC to calculate the bank's liquidity. (R. 154.) To conclude, the attempts of Columbian Bank to improve its liquidity situation were simply too little, too late.

ECF# 117-13, pp. 13-14. Splichal also rejected the Bank's reading of K.S.A. 9-1902(2) as to require an actual unsatisfied creditor's demand before a finding of insolvency. *Id.* at pp. 14-15. Splichal concluded that, "[a] preponderance of evidence, that is clear and convincing in nature, demonstrates Columbian Bank was insolvent, as defined in K.S.A. 9-1902(2), on August 22, 2008." *Id.* at p. 15. This order notified the parties that they had thirty days to file a petition for judicial review under K.S.A. 77-613. *Id.* at p. 17.

In May of 2012, the Bank and CFC filed a new twelve-page petition for judicial review in Shawnee County District Court and "concurrently filed a materially identical Second Amended Petition for Judicial Review" in the prior judicial review proceeding. ECF# 117-14, p. 1, n. 1. The petitioners claimed relief because:

    a. The Commissioner's actions, or the statute or rule and regulation on which the Commissioner's actions are based, violates the Due Process Clause on its face or as applied by allowing the Commissioner to seize a solvent, adequately capitalized bank.

    b. The Commissioner violated the Due Process Clause by failing to provide a timely and adequate hearing for the deprivation of Petitioner's liberty or property.

   c.  The Commissioner acted beyond the jurisdiction conferred by
       law.

   d.  The Commissioner has erroneously interpreted or applied the
       law.

   e.  The Commissioner's action is based on a determination of
       facts that is not supported by evidence that is substantial
       when viewed in light of the record as a whole, which includes
       the agency record for judicial review, supplemented by any
       additional evidence received by the Court.

   f.  The Commissioner's action is otherwise unreasonable,
       arbitrary, or capricious.

ECF# 117-14, p. 12. The OSBC filed a motion to dismiss the judicial review

proceeding, arguing in part that the petitioners had no effective remedy and

were seeking only an advisory opinion. The Shawnee County District Court in

a six-page decision dismissed the action as moot. ECF# 117-16. The CFC

and the Bank appealed. Mark McCaffree, current Vice President of CFC, avers

that OSBC "did not file the full agency administrative record with the District

Court of Shawnee County before the matter was dismissed as moot" and,

consequently, that the KCOA did not have the full agency record on appeal.

ECF# 117-1, p. 10, ¶ 48. The KCOA regarded the record on appeal as

"voluminous" with "more than a thousand pages of documents." ECF# 117-

19, p. 2.

         In their brief before the Kansas Court of Appeals, the Bank and

CFC argued their action was not moot and advocated for the Kansas Court of

Appeals to proceed in the following way:

         The Court need not remand the case to the district court
         because resolution of this case turns on the proper interpretation

of the statutes conferring authority on the Commissioner to seize a bank and appoint a receiver—an issue this Court reviews de novo. It is undisputed that the Bank never failed to meet a depositor's or creditor's demand for payment and that the Bank had a minimum of $8 million in excess liquidity on the day it was closed. The Commissioner's apparent assumption that a bank must keep on hand sufficient cash to immediately and prematurely pay future obligations which by regulatory fiat have been selectively chosen for accelerated payment, and that he had authority to seize and appoint a receiver for a bank utilizing such fuzzy math, is contrary to the governing statutes and conflicts with a century of case law. When applying the law to the facts found by the Commissioner, no conclusion can be reached other than that Columbian Bank was not insolvent, and that the Commissioner exceeded his lawful authority by seizing and appointing a receiver.

ECF# 117-17, pp. 12-13. Among the issues listed in their forty-nine-page appellate brief, the Bank and CFC argued for their statutory interpretation of insolvency, against the agency's interpretation of insolvency as a denial of due process, and against the district court's conclusion that it lacked jurisdiction for mootness. *Id.* at p. 13. Instead of contesting the totals and amounts calculated for the different factors, the appellants' brief disputed Commissioner Splichal's understanding and conclusions about these sums used in determining the Bank's liquidity position on August 21, 2008. Nonetheless, the appellants' brief ended its standard of review with, "When the controlling facts are based on stipulations, an appellate court may determine de novo what the facts establish and need not remand to the district court to reevaluate under the proper legal standard." *Id.* at p. 19-20 (citation omitted).

18

Consistent with that position, the appellants' brief opened its argument opposing the statutory interpretation used by the state district court and the Commissioner on summary judgment by stating:

> There is no dispute that, on August 22, 2008—the day the Commissioner seized Columbian Bank—the Bank was showing a profit, it was adequately capitalized, and that it could and did meet all of its depositors' and creditors' demands for payment that day. It is also undisputed that the Bank had at least $7,999,000 in excess cash, even after subtracting nearly $21 million from the Bank's cash sources to account for the Bank's largest deposit account (the value of which had not been, and was not expected to be, demanded by the depositor). Vol. 15, p. 9-10, 12. The Commissioner declared the Bank insolvent because of a concern as to whether the Bank could pay off certificates of deposit maturing the following week.

ECF# 117-17, p. 20. Additionally, the appellants argued that even if the statute allowed predicting future solvency, the Commissioner's determinations were inconsistent with the statute for including demands that were not usual, customary and anticipated and for not including future sources of liquidity. *Id.* at pp. 27-31. Appellants framed this argument as a challenge to the Commissioner's erroneous interpretation and application of his statutory authority and not as a challenge seeking judicial review on the adequacy of the entire administrative record to sustain the Commissioner's findings. *Id.* at pp. 30-31. On the question of due process, the appellants expressly argued lack of notice on the Commissioner's statutory interpretation prior to seizure and the Commissioner's ongoing efforts to avoid post-seizure judicial review of his actions. *Id.* at p. 33-34. Specifically, "[t]he Commissioner seeks to deny any sort of judicial review of his action

whatsoever, and the district court erroneously abided. That is

unconstitutional." *Id.* at p. 34.

On July 25, 2014, the Kansas Court of Appeals ("KCOA") issued

its twelve-page opinion, 2014 WL 3732013, concluding:

> Although we do not find this judicial review action to be moot,
> we affirm the district court's denial of relief because the Bank
> and its owner have failed to meet their burden of proving the
> invalidity of the Commissioner's action under the Kansas Judicial
> Review Act (KJRA), K.S.A. 77-601 *et seq.*

ECF# 117-19, p. 2. The KCOA observed upfront:

> At the outset, we note that the parties agree that the facts of
> this judicial review action are undisputed. Rather the issues
> presented in this action are either questions of law or questions
> involving the application of the law to the undisputed facts.
> Although the record is voluminous and contains more than a
> thousand pages of documents, we will briefly summarize the
> facts that led to this appeal.

*Id.* The KCOA recognized that its review under the KJRA was limited to

"whether an agency erroneously interpreted the law, whether it took an

action based on a determination of fact that was not supported by

substantial evidence, or whether it acted unreasonably, arbitrarily, or

capriciously." *Id.* at p. 6 (citation omitted). The KCOA recognized its

"unlimited review over statutory interpretation without deference to the

agency's interpretation." *Id.* After concluding that the Bank and the CFC had

standing to seek judicial review under the KJRA, the KCOA began its analysis

of the mootness issue by summarizing its understanding of CFC's appeal:

> On appeal, Columbian seeks to have us declare that the Bank
> was not insolvent, declare that the Commissioner's action was

> unconstitutional, declare that the Commissioner had no authority
> to appoint a receiver, and to set aside both the Declaration of
> Insolvency and Tender of Receivership entered on August 22,
> 2008, and the Decision on Summary Judgment Motions entered
> on April 18, 2012. Columbian argues that such a declaration
> regarding the closure of the Bank, the seizure of its assets, and
> the appointment of a receiver could be a basis for a civil action.
> Moreover, Columbian maintains that such a declaration would
> clear its name. In addition, Columbian contends that if the
> Commissioner's determination of insolvency is allowed to stand,
> the Columbian Financial Corporation will not be able to charter
> another bank in Kansas.

ECF# 117-19, at p. 8. The relief sought in that appeal is essentially the
same relief that CFC presently seeks in this federal action. The KCOA
rejected the mootness argument noting the Shawnee County District had
correctly found the need for a substantive post-seizure review and
"appropriately remanded the matter to the Commissioner to conduct post-
deprivation proceedings under K.S.A. 77-536(e)." *Id.* at p. 9. Thus, when
these post-deprivation proceedings became final, the matter was ripe for
judicial review. The KCOA then held, "[a]ccordingly, we will review the
issues on the merits. See *Estate of Belden v. Brown County*, 46 Kan. App. 2d
247, 288-89, 261 P.3d 943 (2011) ('An appellate court has a vantage point
equal to that of the district court when it comes to questions of law.')." *Id.*

Because the appellants had argued that the Commissioner's
statutory interpretation of his authority to seize and his ongoing efforts to
evade judicial review were a denial of due process, the KCOA held:

> In addition to finding that Columbian has standing and the issues
> are not moot, we find that the procedure utilized after the
> Declaration of Insolvency and Tender of Receivership was

21

necessary to provide due process to Columbian. Columbian argues that eliminating judicial review of a state bank closure "would create serious constitutional implications as it would deny banks and their shareholders to due process." Columbian argues that this court should apply Judge Theis' analysis where he stated that although bank seizures have long been excused from any notice or pre-seizure hearing requirement, that is not necessarily the case post-seizure, and some substantive post-deprivation review is required to constitutionally ground the decision.

The basic elements of procedural due process are notice and an opportunity to be heard. *State v. Wilkinson*, 269 Kan. 603, 608, 9 P.3d 1 (2000). Appellate review of alleged due process violations is a question of law over which this court has unlimited review. *Hemphill v. Kansas Dept. of Revenue*, 270 Kan. 83, 89, 11 P.3d 1165 (2000).

Columbian argues that banks and their owners are entitled to due process, citing *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 35 F.3d 1466, 1472 (10th Cir.1994), and *Woods v. Federal Home Loan Band Bd.*, 826 F.2d 1400, 1411 (5th Cir.1987), which states that "owners of a FSLIC-insured savings and loan association clearly have the constitutional right to be free from unlawful deprivations of their property." We agree. Clearly, Columbian should be entitled to notice and an opportunity to be heard, which was provided to them when they received review from the Commissioner and the Kansas courts under the KJRA.

ECF# 117-19, p. 10. The KCOA clearly understood the appellants to be making a due process challenge, a question of law. The KCOA also plainly held that the Bank and CFC had received due process from the substantive post-seizure review conducted by the Commissioner which was then reviewed on the merits by the Kansas courts under the KJRA.

Consequently, the KCOA took up the substantive issues presented by the Bank and CFC in the judicial review action. The first issue

was whether the Commissioner exceeded his statutory authority by appointing a receiver when the Bank was alleged to still be solvent. "Specifically, Columbian argues that the Commissioner erroneously interpreted the law when he appointed a receiver based on only an appearance of insolvency." *Id.* at p. 10. The KCOA's review of this statutory interpretation issue was unlimited. *Id.* Reading *in pari materia* the relevant provisions, K.S.A. 9-1902, 1903, and 1905, in consideration with the Commissioner's statutory duty of protecting the public, the KCOA held:

> Based on our reading of the Kansas Banking Code, we find that the former Commissioner was authorized to declare the Bank insolvent under K.S.A. 9–1902(2), take charge of the Bank and all of its assets under K.S.A. 9–1903, and appoint a receiver under K.S.A. 9–1905. Moreover, we reject Columbian's argument that a finding of insolvency cannot be made and that a receiver cannot be appointed until actual demands for withdrawals have been made and unsatisfied. Thus, we conclude that the statute permits the Commissioner to reasonably consider future demands that will be made on a bank in order to prevent imminent harm to depositors and to the public.

ECF# 117-19, p. 11. Thus, the KCOA found that the Kansas statutes were correctly interpreted by the Commissioner as giving him the authority to act.

Under the title of "*Substantial Evidence,*" the KCOA addressed the appellants' alternative argument noting first,

> The Bank argues in the alternative that the Commissioner's conclusion that the Bank was insolvent is not supported by substantial competent evidence. As indicated above, however, the parties agree that the material facts are undisputed. Although Columbian would be entitled to relief under the KJRA if the Commissioner's action was "based on a determination of fact, made or implied by the agency, that [was] not supported … by evidence that is substantial when viewed in light of the record

> as a whole," Columbian does not argue it is entitled to relief
> under this section of the KJRA. Instead, in its standards of
> review section, Columbian alleges it is only challenging
> interpretation of statutes and that this court can determine de
> novo what the stipulated facts establish. As such, we will look to
> the factual findings set forth in the Decision on Summary
> Judgment Motions entered by the Commissioner on April 18,
> 2012, and determine whether they are supported by substantial
> evidence.

*Id*. Relying on what the appellants had argued in their brief, the KCOA

understood first that CFC had chosen to not argue for judicial review "in light

of the record as a whole," even though it would have been entitled to pursue

such judicial review. *Id*. Instead, CFC's challenge was with the

Commissioner's interpretation and application of the Kansas statutes based

on the uncontested/stipulated findings of fact in the Commissioner's

summary judgment decision. In that regard, the KCOA also addressed what

CFC argued in the alternative if CFC's statutory interpretation challenge were

rejected:

> Columbian argues that if we find that the Commissioner correctly
> considered demands that would be made on the Bank on August
> 29, 2008, in determining the Bank's liquidity position on August
> 21, 2008, then the Commissioner erred in not also considering
> sources of liquidity that were likely to be available to the Bank
> on or before that future date.
>
> Columbian's arguments that the Commissioner failed to consider
> other sources of liquidity that might have been available to the
> Bank by that "future date"—presumably August 28, 2008—have
> no merit. The Commissioner considered each of the sources of
> liquidity, but ultimately determined that they were too
> contingent to be reliable sources of liquidity in determining
> solvency. The Commissioner did not fail to consider these
> sources as a matter of statutory construction. He found he could

24

not consider these sources because they were not likely to be available.

ECF# 117-19 p. 11. The KCOA specifically addressed the appellants' other arguments on the Commissioner's classification of certain accounts, renewal of brokered accounts, and the largest customer's withdrawal of funds.  The KCOA concluded its analysis as follows:

> Finally, Columbian argues that anything less than a requirement of insolvency-in-fact violates due process. But the Commissioner did find the Bank to be insolvent. So this argument fails to provide Columbian relief from the Commissioner's decision.
>
> Columbian failed to meet its burden to show that the Commissioner's action was invalid. We reviewed the record as a whole, including evidence both supporting and detracting from the Commissioner's finding, and find that the Commissioner's decision is supported by substantial evidence. Moreover, the Commissioner did not erroneously interpret the law or act unreasonably, arbitrarily, or capriciously. We, therefore, affirm the district court's decision denying Columbian relief.

ECF# 117-19, p. 12. Despite the quoted language above, Mr. McCaffree avers on behalf of CFC that, "The Kansas Court of Appeals' Opinion . . . upheld the OSBC's interpretation of the banking statutes without addressing Columbian's argument that such an interpretation is unconstitutionally vague as applied to Columbian." ECF# 117, ¶ 81; ECF# 117-1, ¶ 52. Almost one year after the KCOA's opinion, the Kansas Supreme Court denied review.

### First Amended Complaint in Federal Action

Following the Tenth Circuit's first remand, CFC filed an amended complaint with leave of the court. ECF# 66. CFC's allegations appear chronologically. For what led up to the OSBC's order declaring the Bank

insolvent and seizing the Bank's assets, CFC's relevant allegations are the following. The Bank strengthened its liquidity position after the agreed cease and desist order by offering competitive certificates of deposit, by finding a purchaser for some Texas property, and by increasing its line of credit with the Federal Reserve Bank ("FRB"). The Bank had positive excess liquidity as of August 22, 2008, which would continue through at least August 28, and yet, the OSBC seized the Bank on a finding that it was insolvent and unable to meet the demands of its creditors in the usual and customary manner. The OSBC's decision was based on forecasted illiquidity which assumed the Bank would pay off debts accruing on August 28 with only that cash available on August 22. The OSBC's projections did not include FRB's increased line of credit, the anticipated deposit growth, or the Texas property sale. The OSBC "misrepresented" the usual and customary demands by assuming the Bank's largest customer would withdraw all deposits immediately when "there was no threat of the entire deposit being withdrawn earlier than September 30, 2008." ECF# 66, p. 8, ¶ 40.

  As to the proceedings after the OSBC's Declaration, CFC's relevant allegations are the following. OSBC attempted, but failed, to deny OSBC a post-deprivation hearing. The OSBC's post-deprivation hearing was constitutionally deficient because CFC was denied the opportunity to depose Mr. Thull, the Bank Commissioner who decided, signed, and sent out the Declaration of Insolvency and Tender of Receivership. Without Thull's

deposition, CFC says it was prevented "from determining the precise justifications and calculations relied upon in closing the Bank, and [was] impeded [in] its ability to prove the Bank should not have [been] declared insolvent." ECF# 66, p. 10, ¶ 49. CFC alleges that Commissioner Splichal's summary judgment order was deficient for applying an erroneous interpretation of "insolvency." CFC also alleges this administrative proceeding was illusory due process because Commissioner Splichal could not grant meaningful relief in the form of an injunction or monetary damages.

As to the judicial review proceedings following the post-seizure administrative hearing, CFC makes the blanket allegation that the state courts "rubber-stamped the OSCG's unconstitutional conduct." ECF# 66, p. 12. CFC summarizes these judicial proceedings as the state district court finding that CFC "was not entitled to judicial review" and then granting OSBC's motion to dismiss, followed by the COA "affirm[ing]" the district court in "an unpublished *per curiam* opinion." *Id*. CFC alleges its arguments on appeal addressed only Thull exceeding his statutory powers in closing the Bank and the district court having jurisdiction to review the OSBC's actions. ECF# 66, p. 12, ¶ 58. CFC further alleges the KCOA erred on appeal:

> 60. Beyond merely affirming the district court on the *legal* issues raised CFC, the court of appeals made *factual* findings regarding the propriety of the OSBC's actions. Such findings were improper because there was no evidentiary record before the court of appeals. The OSBC did not file the agency record from its administrative proceedings with district court (as is its

> responsibility under K.S.A. 77-620(a)) before the district court
> dismissed the petition for review. Accordingly, the agency record
> was not transmitted to the court of appeals either.

ECF# 66, p. 12. CFC alleges its exhustion of remedies under state law was

complete with the Kansas Supreme Court's denial of the petition for review.

CFC's amended complaint asserts three counts of relief under 42

U.S.C. § 1983. Count one alleges denial of procedural due process in the

seizing of the Bank and its assets without providing CFC with a hearing "at a

meaningful time and in a meaningful manner" or with a post-seizure hearing

at which meaningful relief was available. Count one also asserts the post-

seizure proceeding and judicial review of it did not provide due process

"because at no time did CFC have an opportunity to receive injunctive or

monetary relief that would have provided it an adequate remedy." ECF# 66,

¶ 71.

Count two alleges denial of procedural due process in the seizing

of the bank pursuant to state statutes that were unconstitutionally vague in

failing to provide fair notice of what alleged conditions in the Bank would

justify a finding of insolvency and seizure. CFC alleges its "property interest

in the Bank as the Bank's sole shareholder was protected by the due process

clause of the Fourteenth Amendment." *Id.* at ¶ 81. In this count, CFC also

alleges that, "The projections Defendants relied upon in finding that the

Bank might be able to meet the demand of a creditor at a future date

arbitrarily and unreasonably ignored sources of liquidity available to the

Bank, and grossly overstated the demands the Bank would face in the normal course of business." *Id.* at ¶ 79.

Count three alleges a malicious and intentional violation of its substantive due process by the defendants issuing the Declaration and seizing the Bank based on incomplete projections of liquidity and misrepresentations of liabilities and without evidence that the Bank was unable to meet its creditors' demands in the usual and customary manner.

CFC's prayer for relief asks for judgment in its favor and:

b. an injunction requiring Defendants to provide CFC a hearing before a neutral judge or magistrate at which it may pursue injunctive relief sufficient to remedy the injuries CFC has suffered arising from the issuance of the Declaration, the seizure of the Bank, and the appointment of FDIC as receiver;
c. the award of attorneys' fees and costs as provided for under 42 U.S.C. § 1988(b);
d. the award of such other relief as this Court may deem just and proper.

ECF# 66, p. 17.

## Res Judicata and Collateral Estoppel

The defendants principally argue that the plaintiff's § 1983 due process claims, procedural and substantive, are subject to the doctrinal bars of res judicata and collateral estoppel. Having fully disputed the manner and substance of the Bank's seizure and receivership in the post-deprivation administrative proceedings provided by the OSBC, CFC concluded them by submitting all issues for final decision before the presiding officer Commissioner Splichal. CFC then pursued and received judicial review of this

administrative decision with the Kansas Courts. The plaintiff's due process claims pending in federal court are all matters that either were decided in these state proceedings or that could have been decided in them. CFC had a full and fair opportunity to litigate all due process challenges in the state proceedings. CFC had the remedies available under the Kansas Judicial Review Act ("KJRA") which provides that the party asserting an agency acted invalidly carries the burden of proof and that a court may grant relief only after determining one of the following:

(1)    The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

(2)    the agency has acted beyond the jurisdiction conferred by any provision of law;

(3)    the agency has not decided an issue requiring resolution;

(4)    the agency has erroneously interpreted or applied the law;

(5)    the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

(6)    the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

(7)    the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

(8)    the agency action is otherwise unreasonable, arbitrary or capricious.

K.S.A. 77-621(c). The defendants argue the statutory breadth of available judicial review encompasses the plaintiff's due process claims which could have been fully advanced in the state judicial review proceedings. Finally, the defendants point to the KCOA's "thorough decision" that expressly found "CFC had been afforded sufficient due process" in the post-deprivation administrative proceedings and judicial review. ECF# 105, p. 21.

CFC contends these doctrinal bars are inapplicable because it was not afforded due process in the administrative proceedings or in the subsequent judicial review. CFC notes the burden is with the defendants asserting the doctrinal bar to show the agency proceeding was "judicial in nature" and provided "sufficient due process protections." *Zimmerman v. Sloss Equipment, Inc.* 72 F.3d 822, 826 (10th Cir. 1995) (citing *Murphy v. Silver Creek Oil & Gas, Inc.*, 17 Kan.App.2d 213, 837 P.2d 1319, 1321 (1992)). CFC advocates following *Scroggins v. Dep't of Human Res.*, 802 F.2d 1289, 1293 (10th Cir. 1986), to conclude that CFC did not have a full and fair opportunity to litigate the merits of its due process claims. CFC points to provisions within the Kansas Administrative Procedure Act ("KAPA"), 77-501, *et seq.*, which limits discovery to that "allowed by the presiding officer," K.S.A. 77-521(a), and which frees the presiding officer from being "bound by technical rules of evidence," K.S.A. 77-524(a). CFC complains that it was prevented from deposing Bank Commissioner Thull who signed the Declaration and that the presiding officer Splichal imputed a

state of mind to Thull without giving CFC the opportunity to cross-examine Thull. CFC challenges the judicial review as insufficient because the district court dismissed its petition as moot and because the KCOA did not have the full administrative record before it and did not address Columbian's argument that OSBC's interpretation of the Kansas banking statutes was unconstitutionally vague. Due to these argued procedural failures, CFC opposes giving preclusive effect to the agency decision and judicial review findings.

Next, CFC argues its claims are not barred by res judicata because they could not have been brought in the prior proceedings. CFC argues its procedural due process claim in count one arises from the defendants' behavior in the administrative and judicial review proceedings and "res judicata does not bar claims . . . predicated on events that postdate the filing of the initial complaint." ECF# 117, p. 37. CFC also insists that raising its procedural challenges before the KCOA "would have been unavailing," because the district court did not reach the merits and because the issues were not raised in the administrative proceeding. "Finally, and most significantly, Columbian's due process injuries were not ripe until the Kansas Supreme Court denied Columbian's petition for review, because until then, it was *possible* (however unlikely) that the OSBC or the Kansas courts would provide Columbian due process." *Id.* (citations omitted). CFC believes its due process claim "had not taken its fixed and final shape, . . . , until it

became clear that no remedy would be forthcoming from Kansas state courts." *Id.* at p. 38.

Under the Full Faith and Credit act, "[f]ederal courts must give to state court judgments 'the same full faith and credit … as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.'" *Pohl v. U.S. Bank for Merrill Lynch First Franklin Mortgage Loan Trust Back Certificates Series 2007-4*, 859 F.3d 1226, 1229 (10th Cir. 2017) (quoting 28 U.S.C. § 1738). The courts must "'ascertain what preclusive effect [the state] would give its own decision before we may know what effect it should be given in the federal court.'" *Id.* (quoting *Stifel, Nicolaus & Co. v. Woolsey & Co.*, 81 F.3d 1540, 1544 (10th Cir. 1996)). "Section 1983, . . ., does not override state preclusion law and guarantee petitioner a right to proceed to judgment in state court on her state claims and then turn to federal court for adjudication of her federal claims." *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 85 (1984) (public policy behind § 1983 justifies no distinction between issue preclusion and claim preclusion effect of state judgments). The Supreme Court, however, recognizes a "'full and fair opportunity' exception to full faith and credit." *Phelps v. Hamilton*, 122 F.3d 1309, 1322 (10th Cir. 1997) (citing *Allen v. McCurry*, 449 U.S. 90. 95 (1980)).

Because res judicata is an affirmative defense, the burden of proof rests with the defendant. *Nwosun v. Gen. Mills Rests., Inc.*, 124 F.3d

1255, 1256 (10th Cir. 1997), *cert. denied*, 523 U.S. 1064 (1998). The

defense can be presented in a motion for judgment on the pleadings based

on the pleadings in the case and on records from prior cases with the same

parties. *See Merswin v. Williams Cos., Inc.*, 364 Fed. Appx. 438, 441 (10th

Cir. 2010); *see also Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 216 (4th

Cir. 2006) ("When entertaining a motion to dismiss on the ground of res

judicata, a court may take judicial notice of facts from a prior judicial

proceeding when the res judicata defense raises no disputed issue of fact.").

The court may "take judicial notice of publicly-filed records in our court and

certain other courts concerning matters that bear directly upon the

disposition of the case at hand." *United States v. Ahidley*, 486 F.3d 1184,

1192 n. 5 (10th Cir.) (citations omitted), *cert. denied*, 552 U.S. 969 (2007).

　　　　Under Kansas law, "[r]es judicata (claim preclusion) prevents

the relitigation of claims previously litigated and contains four elements:  (1)

same claim;  (2) same parties;  (3) claims were or could have been raised;

and (4) a final judgment on the merits." *Neunzig v. Seaman Unified School

Dist. No. 345*, 239 Kan. 654, 660-61, 822 P.2d 569 (1986). "Collateral

estoppel (issue preclusion) prevents the relitigation of issues previously

litigated, and, if res judiciata is found to apply, there is no need to consider

the application of collateral estoppel. *Neunzig*, 239 Kan. at 661 (citations

omitted). "The doctrine of res judicata rests upon considerations of economy

of judicial time and public policy which favors establishing certainty in

judgments." *Neunzig*, 239 Kan. at 662 (citation omitted). "The doctrine of res judicata (or claim preclusion) prohibits a party from asserting in a second lawsuit any matter that might have been asserted in the first lawsuit." *Winkel v. Miller*, 288 Kan. 455, 468, 205 P.3d 688 (2009) (internal quotation marks and citation omitted). The Kansas Supreme Court has articulated the following relevant principles behind the res judicata doctrine:

> The doctrine of res judicata is a bar to a second action upon the same claim, demand or cause of action. It is founded upon the principle that the party, or some other with whom he is in privity, has litigated, or had an opportunity to litigate, the same matter in a former action in a court of competent jurisdiction. *Penachio v. Walker*, 207 Kan. 54, 57, 483 P.2d 1119 (1971). The salutary rule of res judicata forbids a suitor from twice litigating a claim for relief against the same party. The rule is binding, not only as to every question actually presented, considered and decided, but also to every question which might have been presented and decided. *Hutchinson Nat'l Bank & Trust Co. v. English*, 209 Kan. 127, 130, 495 P.2d 1011 (1972). The doctrine of res judicata prevents the splitting of a single cause of action or claim into two or more suits; it requires that all the grounds or theories upon which a cause of action or claim is founded be asserted in one action or they will be barred in any subsequent action. *Parsons Mobile Products, Inc. v. Remmert*, 216 Kan. 138, 140, 531 P.2d 435 (1975). This rule is one of public policy. It is to the interest of the state that there be an end to litigation and an end to the hardship on a party being vexed more than once for the same cause. The doctrine of res judicata is, therefore, to be given a liberal application but not applied so rigidly as to defeat the ends of justice. *Wells, Administrator v. Ross*, 204 Kan. 676, 678, 465 P.2d 966 (1970).
>
> . . . . The doctrine prevents a second assertion of the same claim or cause of action and, regardless of which statute a party uses to proceed to a tribunal, where the same facts, same parties and same issues have previously been litigated before a court of competent jurisdiction which renders a judgment within its competency, the cause of action is barred. *Wirt v. Esrey*, 233 Kan. 300, 308, 662 P.2d 1238 (1983).

*Carson v. Davidson*, 248 Kan. 543, 548-49, 808 P.2d 1377, 1382 (Kan. 1991) (quoting *In re Estate of Reed*, 236 Kan. 514, 519-20, 693 P.2d 1156 (1985)); *see Cosgrove v. Kansas Dept. of Social and Rehab. Services*, 744 F. Supp. 2d 1178, 1186 (D. Kan. 2010) (Kansas appears to follow the transactional approach, that is, the cause of action includes all claims or legal theories arising from the same transaction, event or occurrence.), *aff'd*, 485 Fed. Appx. 290 (10th Cir. Jun. 12, 2012) .

Under Kansas law, collateral estoppel, or issue preclusion, "prevents a second litigation of the same issue between the same parties, even when raised in a different claim or cause of action." *In re Application of Fleet for Relief from a Tax Grievance in Shawnee County*, 293 Kan. 768, 778, 272 P.3d 583 (2012)(The three elements are:  "(1) a prior judgment on the  merits that determined the parties' rights and liability on the issue based upon ultimate facts as disclosed by the pleadings and judgment; (2) the same parties or parties in privity; and (3) the issue litigated must have been determined and necessary to support the judgment." (citing *Venters v. Sellers*, 293 Kan. 87, 98, 261 P.3d 538 (2011)).

This court is to "afford the state judgment full faith and credit, giving it the same preclusive effect as would the courts of the state issuing the judgment." *Reed v. McKune*, 298 F.3d 946, 949 (10th Cir.2002) (internal quotation marks and citation omitted). The preclusive effect will not operate when "the party against whom an earlier court decision is asserted did not

36

have a full and fair opportunity to litigate the claim or issue decided by the first court." *Allen v. McCurry*, 449 U.S. 90, 101 (1980). Thus, the federal court "must determine first whether, under the collateral estoppel rules of Kansas, the previous rulings by the state trial courts bar the plaintiffs from maintaining their present civil rights action; and second, whether the plaintiffs had a 'full and fair opportunity' to litigate their claims in state court." *Phelps v. Hamilton*, 122 F.3d 1309, 1318 (10th Cir.1997). In *Phelps*, the Tenth Circuit summarized this exception for "full and fair opportunity" to litigate:

> "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Montana v. United States*, 440 U.S. 147, 164 n. 11, 99 S.Ct. 970, 979 n. 11, 59 L.Ed.2d 210 (1979). In determining whether the state courts' judgments were fundamentally flawed, "we may only examine whether the state proceedings satisfied 'the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause.'" *Kiowa Tribe of Okla. v. Lewis*, 777 F.2d 587, 591 (10th Cir.1985) (quoting *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982)).

*Phelps v. Hamilton*, 122 F.3d at 1322. More recently, the Tenth Circuit added the following to this exception:

> This narrow exception applies only where the requirements of due process were not afforded, *see Crocog Co. v. Reeves*, 992 F.2d 267, 270 (10th Cir. 1993)—where a party shows "a deficiency that would undermine the fundamental fairness of the original proceedings," *Nwosun* [*v. General Mills Restaurants, Inc.*], 124 F.3d [1255,] at 1257 [(10th Cir. 1997)] (citation omitted). *See also Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 39 (1st Cir. 1998) ("[A]s long as a prior ... judgment is procured in a manner that satisfies due process concerns, the requisite 'full and fair opportunity' existed."); 18

> Wright & Miller, *supra*, § 4415, at 366 (opining that full and fair
> opportunity exception "mean[s] no more than that claim
> preclusion cannot arise from proceedings that deny due
> process"). The fairness of the prior proceeding "is determined by
> examining any procedural limitations, the party's incentive to
> fully litigate the claim, and whether effective litigation was
> limited by the nature or relationship of the parties." *Nwosun*,
> 124 F.3d at 1257–58.

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1243

(10th Cir. 2017). Additionally, "claim preclusion applies to all claims arising

from the same underlying transaction even where the new claims are based

on newly discovered evidence, unless the evidence was either fraudulently

concealed or it could not have been discovered with due diligence." *Id.*

(citing in part

"The very nature of due process negates any concept of

inflexible procedures universally applicable to every imaginable situation."

*Kremer*, 456 U.S. at 482 (internal quotation marks and citations omitted). In

*Kremer*, the Supreme Court summarized a procedure that included a public

hearing on the merits before an agency board with the claimant having the

opportunity to present argument and evidence followed by judicial review "to

assure that a claimant is not denied any of the procedural rights to which he

was entitled and" to determine that the agency board's decision was not

arbitrary and capricious. *Id.* The Supreme Court held, "We have no

hesitation in concluding that this panoply of procedures, complemented by

administrative as well as judicial review, is sufficient under the Due Process

Clause." *Id.* Moreover, "[t]he fact that Mr. Kremer [claimant] failed to avail

himself of the full procedures provided by state law does not constitute a sign of their inadequacy." *Id.* (citation omitted).

"[T]he doctrine of res judicata applies to administrative determinations 'when the first administrative proceeding provides the procedural protections similar to court proceedings when an agency is acting in a judicial capacity.'" *In re Application of Fleet for Relief from a Tax Grievance in Shawnee County*, 293 Kan. 768, 779, 272 P.3d 583 (2012) (quoting *Winston v. Kansas Dept. of SRS*, 274 Kan. 396, 413, 49 P.3d 1274 (2002) (citing *Parker v. Kansas Neurological Institute*, 13 Kan. App. 2d 685, 686, 778 P.2d 390, *rev. denied*, 245 Kan. 785 (1989))). Put another way, while the doctrine of res judicata/claim preclusion generally does not apply to administrative agency actions, *see Riedmiller v. Harness*, 29 Kan.App.2d 941, 944, 34 P.3d 474 (2001), *rev. denied*, 273 Kan. 1037 (2002), the doctrine will apply to administrative determinations when the agency acts in its judicial capacity and conducts proceedings so as to provide the necessary procedural protections, *Winston v. Kansas Dept. of SRS*, 274 Kan. 396, 413, 49 P.3d 1274, *cert. denied*, 537 U.S. 1088 (2002). "Therefore, the finality of an administrative decision which has been appealed to exhaustion is substantially similar to that of a judicial determination. A final judicial determination is conclusive for all issues raised or which might have been raised." *Merkel v. Board of Emergency Medical Services*, 2006 WL 3000761, at *4, 144 P. 81 (Table) (Kan. App. Feb. 14, 2007) (citing *Kansas Baptist*

*Convention v. Mesa Operating Ltd. Partnership*, 258 Kan. 226, 231, 898 P.2d 1131 (1995)).

In applying the four elements of res judicata/claim preclusion to the administrative decision and the final judicial determination here, the parties' arguments show no dispute over the same claims, the same parties, and a final judgment on the merits. This is consistent with the transactional approach. CFC's federal action involves the same transaction, events and occurrences involved in the state proceedings. The extensive overlap is plainly demonstrated by a simple comparison of CFC's allegations and arguments made in the state proceedings with the allegations and arguments found in CFC's first amended complaint. All of which is fully set out above. The same decisions, same actors, same factors and same procedures challenged and addressed in the state proceedings now drive this federal litigation. The state's public policy interest in ending litigation and hardship caused by multiple suits over the same cause is plainly implicated by CFC's federal suit. In such circumstances, Kansas law favors a liberal application of res judicata.

Of the four elements to claim preclusion, CFC disputes only the third element, that is, whether some of its claims were or could have been raised in the state proceedings. CFC offers the general rule that a party should not be barred from bringing a second suit on the same transaction when it is based on new facts transpiring after the first suit's disposition.

CFC similarly cites Kansas and Tenth Circuit holdings that issues not ripe in the first suit are not subject to res judicata. CFC specifically argues its procedural due process claim in count one is not barred by res judicata because the claim arises from the defendants' ongoing conduct in the actual state administrative and judicial review proceedings. At the first state district court proceeding, CFC alleges OSBC opposed a due process hearing for CFC which resulted in no timely hearing to contest seizure of assets and delayed a hearing for over three years. At the administrative hearing on remand, CFC alleges OSBC denied it adequate discovery on the reasons for closing the bank. At the subsequent judicial review proceedings, CFC alleges OSBC denied it effective judicial review by failing to file the administrative record. CFC concludes that, these "facts could not have been made part of Columbian's claims in the prior proceedings, because the facts developed during the course of those proceedings." ECF# 117, p. 37. For its legal authority, CFC cites, "'res judicata does not bar claims that are predicated on events that postdate the filing of the initial complaint.'" *Whole Woman's Health v. Hellerstedt*, ---U.S.---, 135 S. Ct. 2292, 2305 (2016) (quoting *Morgan v. Covington*, 648 F.3d 172, 178 (3rd Cir. 2011)).

CFC's arguments are not persuasive, and its cited case law does not bear any procedural resemblance or relevance here. *Hellerstadt* employed its rule to distinguish between the adjudicated "preenforcement facial challenge" and the unadjudicated "as-applied challenge." *Id*. The Court

recognized that material factual development showing changed circumstances and new constitutional harm would allow a new constitutional "as-applied" claim. *Id.* Unlike *Hellerstadt*, CFC's factual allegations address matters that occurred in and during the pendency of the state litigation and that could have been raised and reviewed at each subsequent stage of these state proceedings. CFC's federal claims are not new claims based on facts that it did not know or could not have known and argued in the state proceedings. Nor are they claims based on new facts arising from a different transaction:

> [B]roadly speaking, claim preclusion does not bar subsequent litigation of new claims based on facts the plaintiff did not and could not know when it filed its complaint, *see Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 914 (7th Cir. 1993); *cf. Mitchell v. City of Moore*, 218 F.3d 1190, 1202–03 (10th Cir. 2000). Critically, though, if the plaintiff discovers facts during the litigation that stem from the same underlying transaction, it must supplement its complaint with any new theories those facts support. *Stone* [*v. Department of Aviation*], 453 F.3d [1271] at 1278–79 [(10th Cir. 2006)]; see also *id.* at 1280 ("[A] plaintiff's obligation to assert claims arising out of the same transaction continues throughout the course of the litigation." (emphasis omitted)). A subsequent lawsuit will be allowed only if the facts discovered mid-litigation give rise to "new and independent claims, not part of the previous transaction." *Hatch* [*v. Boulder Town Council*], 471 F.3d [1142] at 1150 [(10th Cir. 2006)]. Put differently, "a plaintiff can[not] avoid supplementing his complaint with facts that are part of the same transaction asserted in the complaint, in the hope of bringing a new action arising out of the same transaction on some later occasion." *Id.*

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1244–45 (10th Cir. 2017).

CFC's count one involves only one transaction and alleges claims against the defendants' litigation conduct at each stage in the state proceeding. The defendants' litigation conduct, however, at each stage was always subject to challenge and review at that stage and the next. The timing and constitutional adequacy of a post-seizure administrative hearing was litigated and decided in the first state district proceeding. It also could have been litigated before the KCOA after the post-seizure administrative hearing. The adequacy of discovery in the administrative proceeding could have been litigated before the KCOA. The lack of a full administrative record before the KCOA was a matter which CFC could have litigated but chose not to. As discussed above, the KCOA noted that CFC did not seek this relief in its judicial review arguments. ECF# 117-19, p. 11. Nor did CFC ask the KCOA to reverse the mootness ruling and to remand the case back to the district court for the full administrative record to be filed and for all other judicial review arguments to be pursued. CFC's litigation strategy before the KCOA does not change the meaning of what claims could have been litigated in the judicial review proceedings. CFC's federal claim in count one turns on the defendants' litigation conduct occurring in the state proceedings, and this alleged conduct essentially ended with the second district court proceeding. Nothing prevented CFC from having these matters fully addressed before the KCOA. That CFC failed to avail itself of the full procedures provided by state law does not show them to be inadequate or

unavailing. Finally, the due process claims alleged in count one were ripe when CFC appealed to the KCOA. That it failed to prevail on appeal and on its subsequent petition for review does not render any alleged constitutional injury incomplete. CFC's due process claim was fixed and final as of its appeal to the KCOA, and that court expressly undertook a judicial review on the merits of the arguments presented. ECF# 117-19, p. 10. In sum, the court finds that the defendants have shown that the state administrative and judicial review proceedings satisfy the required elements for claim preclusion justifying dismissal of CFC's federal due process claims.

CFC's remaining challenge to claim preclusion is that it was denied due process in the state administrative and judicial review proceedings and that this prevents claim preclusion. CFC first contends the federal court should decline to give preclusive effect to the state administrative proceedings, because the defendants cannot show the agency proceeding was judicial in nature and provided sufficient due process protections. This argument has little traction. The administrative proceedings were appealed and subjected to full judicial review under the KJRA. Having been judicially appealed to exhaustion, this administrative decision becomes "substantially similar to that of a judicial determination" making it "conclusive for all issues raised or which might have been raised." *Merkel*, 2006 WL 300761, at *4. "[F]ederal courts must give preclusive effect to factual and legal determinations made by state courts when reviewing state

administrative agency actions." *Estate of Bassatt v. Sch. Dist. No. 1 in the City and County of Denver*, 775 F.3d 1233, 1237-38 (10th Cir. 2014) (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 485 (1982) ("holding that a state court decision affirming a state agency determination on a claim of employment discrimination is entitled to preclusive effect")); *see Ryan v. City of Shawnee*, 13 F.3d 345, 347 (10th Cir. 1993)("However, where the arbitration award was challenged and reviewed in state court, as here, section 1738 requires that we ascertain and give the same effect to the state court judgment as the courts of Oklahoma would give a state court decision affirming an arbitration award. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 381 (1985)."). The KCOA reviewed the merits of CFC's judicial review arguments, and its decision is a judicial determination comporting with due process. CFC chose to appeal without raising issues that required a full administrative record and without requesting either this full record to be filed or a remand to district court for review with the full record. CFC's choice not to avail itself of available procedural protections does not render the state proceedings constitutionally insufficient and does not change the character of the state proceedings into non-judicial.

Though unnecessary, this court has no difficulty in finding that the post-seizure administrative proceedings were conducted by the OSBC acting in a judicial capacity and following KAPA procedures. For that matter,

the court finds nothing of merit to CFC's cursory allegations over the lack of due process in the administrative proceeding. Its issue with the presiding officer denying the deposition of former Commissioner Thull was a procedural ruling fully reviewable in the state courts had CFC chosen to litigate it. CFC's claim of prejudice from this procedural ruling is insubstantial. The quoted sentence from the presiding officer's summary judgment order does not show reliance on Thull's state of mind as much as it states an obvious conclusion from the fact that Thull expressly relied on the terms of K.S.A. 9-1902(2), when he issued the Declaration of Insolvency on August 22, 2008. More importantly, the post-seizure administrative proceedings reveal CFC engaged in significant discovery, had every opportunity to present its arguments and evidence, and then pursued judicial review available under state law to assure that its procedural rights were protected and the presiding officer's decision and his objectivity were subject to broad review under the KJRA. Like the Supreme Court said in *Kremer*, "We have no hesitation in concluding that this panoply of procedures, complemented by administrative as well as judicial review, is sufficient under the Due Process Clause." 456 U.S. at 482.

CFC insists this case resembles *Scroggins v. Dep't of Human Res.*, 802 F.2d 1289, 1293 (10th Cir. 1986), and lends to the same conclusion that a Kansas court would not apply res judicata to this agency decision, "because it did not believe Kansas 'would clothe [the] quasi-judicial

proceeding with the vestments of a formal adjudication." In *Scroggins*, the plaintiff first filed his federal racial discrimination suit and was then discharged from his state employment four weeks later. He exhausted his state administrative remedies before the state civil service board which found that his discharge was reasonable for his failure to perform work duties, for his misrepresenting work product, for his insubordination, and for his harassing female co-workers. 802 F.2d at 1290. The state district court uphold the board's findings, and the KCOA summarily affirmed without a written order. *Id.* When the plaintiff resumed his federal litigation, "the district court found the alleged discriminatory acts and wrongful termination infused both the state and federal inquiries" and concluded that res judicata precluded relitigating the issues in the federal suit. *Id.* at 1291.

The Tenth Circuit reversed and remanded upon finding that the administrative agency record and decision did not show a "reasonably discernible" path in "both the substantive and procedural history" of the case. *Id.* at 1292 (citing and quoting *Matter of University of Kansas Faculty v. Public Employees Relations Board*, 2 Kan.App.2d 416, 581 P.2d 817 (1978)). The state proceedings focused on the reasonableness of the agency's termination decision and not on Scroggins' allegations of racial discrimination. The importance of the state proceedings to the federal action was to quiet the asserted defense of exhaustion of administrative remedies. "Although appellant had already filed a federal suit for discrimination in

employment under Title VII, the [subsequent] *act* of his [state] dismissal catapulted his claim in the narrower administrative review." Id. at 1292. While the appellant argued his state employment termination was for "nonmerit reasons," the administrative record showed no presentation of proof as contemplated for racial discrimination claims. *Id.* at 1292. The state courts on appeal simply "reiterated the Agency's reasons" and "disregarded without addressing the appellant's alleged errors." *Id.* Concerned over whether the plaintiff had a full and fair opportunity to litigate the racial discrimination claims, the Circuit distinguished *Kremer* where "the plaintiff was afforded a comprehensive review and hearing before the state commission on civil rights which had conducted its own investigation" from the plaintiff Scroggins' administrative case in which there was "no similarly focused review" of the racial discrimination allegations. *Id*. The Circuit was careful to say that it did "not believe, on the record before us, that the state would clothe this quasi-judicial proceeding with the vestments of a formal adjudication of plaintiff's **claim of racial discrimination**." *Id.* at 1293 (bolding added). In looking at the judicial review, the Circuit added:

> Because the character of judicial review was both narrow and conclusory, we are unwilling to bar appellant's federal suit under Title VII. To do so would imprint the determinations of a state's quasi-judicial civil service commission, absent any indication to the contrary, with the symbols of a judicial proceeding. Moreover, the Court made clear in *Kremer v. Chemical Construction Corp.*, 456 U.S. at 477, 102 S.Ct. at 1895, that its earlier decisions on the relationship between § 1738 and Title VII "establish only that initial resort to state administrative remedies does not deprive an individual of a right to a federal trial de novo

> on a Title VII claim." *Migra* amplifies this decision by establishing
> that state, not federal, preclusion must then apply.

*Scroggins v. Dep't of Human Res.*, 802 F.2d at 1293 (footnote omitted).

In applying *Scroggins*, one cannot overlook two things. The Circuit was not confident that the state proceedings included, considered, and decided the plaintiff's race discrimination claims that had been first raised in federal court. *See Brin v. Kansas*, 101 F. Supp. 2d 1343, 1348 (D. Kan. 2000) (cited *Scroggins* with this parenthetical comment, "finding no res judicata on issue of race discrimination where the hearing before the Kansas Civil Service Board focused on the reasonableness of the dismissal, not on the charges of discrimination.") The Tenth Circuit was bothered by the unique procedural posture arising from the plaintiff Scroggins having filed his federal race discrimination claims first and then was terminated from state employment and compelled to exhaust state administrative remedies. In contrast, CFC first argued and litigated the claims of due process in the state proceedings, and these claims simply continued as CFC's lack of success and disapproval grew with each stage of the state proceeding. Moreover, this court is confident that CFC had sufficient opportunity to raise and argue in the state proceedings the due process claims now raised in federal court. The post-seizure administrative proceedings were ordered by the state district court to provide CFC with post-seizure due process. The judicial review proceedings similarly were focused on protecting the same procedural rights while addressing all of CFC's arguments and issues challenging OSBC's

original seizure, its interpretation of its statutory authority, and its application of this authority to stipulated facts. *See Spencer v. Unified School Dist. No. 501,* 1997 WL 614329, at *4 (D. Kan. 1997) (Distinguishing *Scroggins* on similar grounds). That some of CFC's due process claims went unaddressed is largely due to CFC's litigation strategy and choices in the state court proceedings, particularly before the KCOA. See *Yapp v. Excel Corp.*, 186 F.3d 1222, 1229 (10th Cir. 1999) (Claimant's loss of the opportunity to litigate was due to his own advocacy and his own assumed risk of claim preclusion. "It is difficult to label this particular court order as the culprit in denying Yapp a full and fair opportunity to be heard.").

The second thing about *Scroggins* is that the federal suit was based on federal statutory claims of racial discrimination. There was no Kansas precedent recognizing that general state civil service board findings would preclude subsequent Title VII proceedings. More to the point, the KCOA subsequently held, "Until such time as the Kansas Legislature specifically states that an administrative action is the exclusive remedy for a discrimination claim, a negative finding by the Civil Service Board or a finding of no probable cause by the KCCR does not preclude a subsequent action in the district court for discriminatory discharge." *Parker v. Kansas Neurological Institute*, 13 Kan.App.2d at 690; *See also University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (holding that findings of fact in unreviewed administrative proceedings do

not have preclusive effect by collateral estoppel in Title VII cases, but that they do have preclusive effect in § 1983 and other proceedings.); *Compare Morales v. Kansas State University*, 727 F.Supp. 1389, 1392 (D.Kan.1989) (where issue of retaliation was fully litigated before the Kansas Civil Service Board, such finding had collateral estoppel effect).

In sum, *Scroggins* is not only different on its facts but is also distinguishable on those factors driving its holding. Instead of sharing "many similarities" to this case, *Scroggins'* criticisms of the state proceedings are best read as only accentuating the different focuses between the state and federal proceedings. In doing so, the Circuit in *Scroggins* was emphasizing that the plaintiff was not afforded full and fair opportunities for litigating his racial discrimination charges at any time before the civil service board and in the perfunctory judicial review proceedings. As already discussed above, the same cannot be said in the instant case. CFC's due process challenges were consistently and continuously argued in one form or another throughout the state judicial review process. *See MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 832 (10th Cir. 2005) (Litigant's chance to assert theory later before the reviewing court is sufficient and subject to res judiciata); *McKinney v. Pate*, 20 F.3d 1550, 1563 (11th Cir. 1994) ("[O]nly the state's refusal to provide a means to correct any error resulting from the bias would engender a procedural due process violation."), *cert. denied*, 513 U.S. 1110 (1995); There was no refusal here to provide full judicial review, just as there is

nothing perfunctory about the KCOA's decision here. The opportunities to correct the errors below provided due process.

Finally, as demonstrated in the adversarial character of the state litigation pursued, the detailed presentations of issues and evidence made, and the extensive and reasoned decisions rendered, the state proceedings are hardly what one would consider as falling below the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause. See *Mitchell v. Albuquerque Bd. of Educ.*, 2 F.3d 1160 (10th Cir. Aug. 13, 1993) (unpub) (plaintiff argued no full and fair opportunity due to bias of reviewing administrative agency and inability to subpoena witnesses, but the Tenth Circuit found these equities "clearly outweighed by substantial procedural and substantive due process provided to Plaintiff" noting "the thoroughness of the hearings and subsequent appeals"). The court finds no solid "reason to doubt the quality, extensiveness, or fairness of procedures followed in" the state proceedings. See *Montana v. United States*, 440 U.S. at 164 n. 11. The state proceedings as a whole provided an adequate venue for CFC to challenge the merits of the seizure and receivership, and to raise all issues on statutory authority, bias, discovery, and any other procedural questions. Not prevailing in the state proceedings does not necessarily equate with the denial of due process. *See Weaver v. Boyles*, 172 F.Supp.2d 1333, 1341 (D. Kan. 2001) (Losing in state court is not evidence of bias on the part of the state court. (quotation marks and citation omitted)), *aff'd*, 26 Fed. Appx.

908 (10th Cir. 2002). Something more needs to be alleged and shown. For that matter, this court's jurisdiction does not extend to sitting in appellate review of the state courts. See *Sparkman Learning Ctr. v. Arkansas Dept. of Human Services*, 775 F.3d 993, 998 (8th Cir. 2014) (Litigants may "not bring claims before a federal court that were already fully decided by state courts in what would amount to appellate review of the state court ruling." (citations omitted)). For all these reasons that fully address the arguments that have been briefed by the parties, the court finds the plaintiff's § 1983 due process claims are barred by res judicata/claim preclusion based on the KCOA's decision, specifically:

> Columbian argues that banks and their owners are entitled to due process, citing *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 35 F.3d 1466, 1472 (10th Cir.1994), and *Woods v. Federal Home Loan Band Bd.*, 826 F.2d 1400, 1411 (5th Cir.1987), which states that "owners of a FSLIC-insured savings and loan association clearly have the constitutional right to be free from unlawful deprivations of their property." We agree. Clearly, Columbian should be entitled to notice and an opportunity to be heard, which was provided to them when they received review from the Commissioner and the Kansas courts under the KJRA.

ECF# 117-19, p. 10. This court must give the same full faith and credit to this decision as it enjoys in the Kansas courts, and CFC had a full and fair opportunity to litigate its due process claims in these state proceedings as decided by the KCOA.

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment, or in the alternative, judgment on the pleadings (ECF# 104) is granted on the grounds stated above;

IT IS FURTHER ORDERED that the defendants' objection (ECF# 121) to the magistrate judge's order is denied as moot.

Dated this 17th day of May, 2018, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge